HARDOUIN, DEMANDANTE Y APELADO, v. KRAJEWSKI-PESANT CO., DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en causa sobre cobro de dinero.

No. 1238.—Resuelto en julio 8, 1915.

COMPARECENCIA GENERAL Y VOLUNTARIA—OBJECIÓN AL EMPLAZAMIENTO Y SU DILIGENCIAMIENTO—JURISDICCIÓN—RENUNCIA.—En virtud de la comparecencia general y voluntaria del demandado, todas las objeciones al emplazamiento y su diligenciamiento, y a la jurisdicción de la corte sobre la persona del demandado, se entienden renunciadas.

ARRENDAMIENTO DE SERVICIOS—OBLIGACIONES RECÍPROCAS—JUSTA CAUSA—DAÑOS Y PERJUICIOS.—En los contratos de arrendamiento de servicios, una vez que las partes se obligan recíprocamente, si cualquiera de ellas deja de cumplir, sin justa causa, las estipulaciones convenidas, está obligada a indemnizar a la otra los daños y perjuicios que con tal motivo le causare.

ID.—ESTIPENDIO—DAÑOS Y PERJUICIOS.—En los contratos de arrendamiento de servicios, la prestación de los mismos es requisito indispensable para tener derecho al estipendio, y el que no los presta, puede despedirse o ser despedido antes del cumplimiento, siendo sólo la indemnización el derecho que tiene el que presta los servicios, si fuere despedido sin justa causa.

ID.—SERVICIOS PERSONALES—DAÑOS Y PERJUICIOS POR QUEBRANTAMIENTO DEL CONTRATO—REMEDIO ADECUADO.—El derecho de un empleado que se compromete a prestar sus servicios personales, de salir del servicio de su principal, descansa sobre la misma base que el derecho del principal de dejarlo cesante. Si el salir del servicio en el primer caso, y el dejar cesante en el segundo, es una infracción del contrato existente entre las partes, la persona que sufra perjuicios por motivo del quebrantamiento del contrato, tiene su acción para recobrar daños y perjuicios, y éste es su remedio adecuado.

ID.—INDEMNIZACIÓN: QUÉ COMPRENDE.—La indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor.

ID.—CUANTÍA DE LOS DAÑOS Y PERJUICIOS—CONTRATO POR TÉRMINO DEFINIDO—BASES PARA CALCULARLA.—La cuantía de los daños y perjuicios sufridos por incumplimiento, por parte del principal, de un contrato de arrendamiento

de servicios, es, *prima facie,* la remuneración estipulada en el contrato, pudiendo el demandado obtener que se rebaje dicha cuantía mediante prueba de la cantidad que el empleado hubiere ganado realmente o hubiera podido ganar durante el tiempo en que debió estar vigente el contrato.

Id.—Daños y Perjuicios por Incumplimiento del Contrato—Prueba del Demandado — Reducción de la Suma Reclamada — Obligación del Demandante—Prueba.—Incumbe al demandado en una acción sobre daños y perjuicios por incumplimiento de contrato de arrendamiento de servicios, la obligación de probar que el demandante ha conseguido o pudo haber conseguido otro empleo; y aunque el empleado que ha sido despedido tiene asimismo el deber de buscar otro empleo corriendo así el riesgo de que la cantidad que trata de recobrar sea reducida en la suma que por ello hubiera podido ganar, no está obligado a buscar empleo de distinta naturaleza o en otra localidad o con una persona que no le convenga.

Comisiones—Deber del Comitente—Comisionista—Premio de Comisión.—El comitente está obligado a abonar al comisionista el premio de comisión, salvo pacto en contrario.

Los hechos están expresados en la opinión.

Abogados del apelante: Sres. *Martínez & Iriarte.*

Abogado de la apelada: Sr. *José E. Benedicto.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra sentencia de la Corte de Distrito de San Juan, Sección 1ª., por virtud de la cual se condenó a la sociedad demandada a pagar al demandante la suma de $4,535.82 e intereses legales contados a partir de la fecha de la interposición de la demanda con más las costas, gastos y honorarios de abogados que se justifiquen.

En la demanda se alegaron los siguientes hechos:

"1. Que el demandante es mayor de edad, Ingeniero Civil y de esta vecindad, y la compañía demandada es una sociedad constituída en el Estado de New York, haciendo negocios en esta isla, en donde es representada por sus agentes Sucesores de L. Villamil y Compañía, S. en C., con oficina en esta Capital.

"2. Que en virtud de un contrato celebrado en primero de junio de 1910 entre los Señores Krajewski-Pesant Co. y el demandante, fué nombrado éste agente vendedor de dicha compañía en la Isla de Puerto Rico por el término de un año, contado desde el primero de julio de 1910, prorrogable ese plazo por mutuo acuerdo de las partes.

"3. Que en el indicado contrato se asignó al demandante un sueldo de trescientos dollars mensuales, a partir del primero de enero de 1911, y una comisión además de un seis por ciento sobre el valor de las ventas de las maquinarias de la Central Vannina de Río Piedras y un tres por ciento sobre las ventas de maquinarias que realizase la indicada compañía en esta isla, por conducto de su agente vendedor de maquinarias, el demandante Señor Hardouin.

"4. Que desde la celebración del indicado contrato, el demandante ha estado siempre dispuesto a cumplir y llevar a cabo todas y cada una de las obligaciones que en el mismo le fueron impuestas, bien y fielmente.

"5. Que la compañía demandada se ha negado, sin causa alguna, a cumplir y llevar a efecto el indicado contrato, sobre agencia y venta de maquinarias en esta isla, habiendo comunicado al demandante en 28 de diciembre de 1910 su resolución de romper y dejar sin efecto el aludido contrato.

"6. Que según creencia e información del demandante, la compañía demandada ha vendido a la Central Vannina de Río Piedras, durante el año mil novecientos diez, en que estaba vigente el aludido contrato, maquinarias por un valor de cuarenta y cinco mil quinientos noventa y cinco dollars, negándose a pagar al demandante su comisión de un seis por ciento sobre el valor de dichas ventas.

"7. Que el incumplimiento del contrato por parte de la compañía demandada, ha ocasionado al demandante la pérdida de su sueldo de mil ochocientos dollars durante seis meses y además la comisión del seis por ciento sobre los cuarenta y cinco mil quinientos noventa y cinco dollars, importe de las ventas realizadas por dicha compañía a la Central Vannina, ascendente dicha comisión a dos mil setecientos treinta y cinco dollars; cuyas cantidades con sus intereses hacen un total de cuatro mil novecientos cincuenta dollars, en que estima el demandante los daños y perjuicios que le ha causado la compañía demandada por incumplimiento del referido contrato."

La demandada presentó una "moción para dejar sin efecto el emplazamiento," basándose en que se había hecho mediante entrega de una copia del mismo a uno de los socios de la casa de L. Villamil y Co., de San Juan, que no estaba autorizado para representar a la corporación demandada, contestando luego la demanda en los siguientes términos:

"*Primero.* La parte demandada niega que sea una sociedad constituída en el Estado de New York y que como tal corporación esté

o haya estado haciendo negocios en esta isla. Y niega asimismo que esté representada en esta isla por los Señores Sucesores de L. Villamil y Compañía, S. en C., y que éstos seàn sus agentes.

"*Segundo.* La parte demandada niega específicamente que haya celebrado contrato alguno con el demandante Camilo Hardouin, y niega en general todas las demás alegaciones esenciales que se hacen en la referida demanda enmendada.

"*Tercero.* Como defensa adicional en contra de la demanda interpuesta en esta acción el demandado dice que esta honorable corte no tiene ni ha adquirido jurisdicción sobre la parte demandada, la cual no tiene ni ha tenido residencia legal en Puerto Rico, ni un agente residente en esta isla, autorizado para aceptar el emplazamiento hecho a la parte demandada; y que el emplazamiento hecho a los Sres. Sucesores de L. Villamil & Co., S. en C., es insuficiente para conferir a esta corte jurisdicción sobre la parte demandada."

Señalado día para la vista, ambas partes comparecieron, presentando el demandante la siguiente prueba:

1. Certificación creditiva de que la sociedad demandada no aparece registrada en la Secretaría de Puerto Rico;

2. Copia de cierta demanda presentada por la sociedad demandada, por medio de "sus agentes Sucesores de L. Villamil & Co." contra el demandante;

3. Copia de una parte de cierta petición de *injunction* presentada por la demandada "por medio de su agente Sucesores de L. Villamil & Co.," y del juramento de la misma que comienza así: "Yo, José León Núñez, socio gestor de Sucesores de L. Villamil & Cía., como agentes de Krajewski-Pesant Co., de New York,    *   *   *.''

4. Recibo suscrito por "Sucrs. de L. Villamil & Co., *as agents of* Krajewski-Pesant Co."

5. La traducción al castellano de una carta escrita originalmente en francés, que dice así:

Krajewski-Pesant Co., San Juan, P. R., 1 de junio, 1910.   Sr. Don C. Hardouin, San Juan P. R.   Querido Señor: De conformidad con los términos de nuestra conversación de hoy, yo le ofrezco a Vd. en nombre de la Krajewski-Pesant Co., y Vd. acepta de ser mi sucesor como agente de esta sociedad a contar del 1 de julio, 1910, con las siguientes condiciones:

"Sueldo fijo a contar del 1 de enero de 1911: Trescientos dollars mensuales.

"Comisión sobre todos los negocios de la casa Krajewski-Pesant Co., verificados en Puerto Rico: Tres por ciento, siendo convenido que el sueldo se confundirá con la comisión cuando esta última pasare de cuatro mil dollars por zafra.

"A consecuencia de este acuerdo Vd. se compromete hacer las gestiones necesarias para que la casa Krajewski-Pesant Co. reciba la orden completa para el material de la Central de Río Piedras, y eso bajo las condiciones estipuladas en mi carta del 28 de abril estipulando una comisión del seis por ciento especial sobre el importe de $169,400 de ese negocio la cual comisión se sustituye a la comisión del 3 por ciento estipulada más arriba.

"Por mi parte, yo me comprometo a hacer ratificar esta convención por la casa de Krajewski-Pesant Co. a mi llegada a New York.

"El presente contrato será renovable·todos los años a la voluntad de las dos partes.

"De Vd. muy atto. y S. S., (Sgd.) Alfred Musy. Aceptado, (Sgd.) C. Hardouin.

"Conforme con el original en idioma francés: (Sgd.) L. Ledia."

6. Otra carta que dice:

*"Krajewski-Pesant Co.    New York, June 15, 1910.    Mr. Camilo Hardouin, P. O. Box 991, San Juan, P. R.*

*"Dear Sir: We have discussed with Mr. Alfred Musy the proposal, offered by him that you represent us jointly in Porto Rico during the year 1911.    We wish to state that said proposal meets with our approval.    We confirm below our understanding.*

*"We will pay you the sum of $300 (three hundred dollars) per month, from the 1st of January, 1911, and thereafter for six months; all traveling expenses to be paid by you.    We will also allow you a commission of 3 % (three per cent) on all the sales made by you and Mr. Musy in Porto Rico.    Should this commission exceed the sum of $4,000 (four thousand dollars) per year, it is understood that your salary will be deducted from this amount.*

*"Yours truly, Krajewski-Pesant Co.    (Sgd.) J. A. Pesant."*

7. Otra carta que lee:

*"Dic. 28, 1910.    Mr. Camilo Hardouin, Río Piedras, P. R.*

*"Dear sir: We beg to hereby notify you, that due to your recent hostile attitude and your behavior towards this company, it makes*

*it an utter impossibility for us, to have you act as our selling agent, as were our intentions from and after January 1, 1911.*

*"We greatly regret that your recent procedure towards us makes this action on our part necessary.*

*"Yours very truly, (Sgd.) Krajewski-Pesant Co., J. A. Pesant, Gen. Manager."*

8. Declaración del demandante, a la que nos referiremos al analizar la prueba, y

9. Declaración del abogado del demandante relativa a la imposibilidad en que se encontraba de presentar una certificación creditiva del registro de la demandada en la Secretaría de Estado del Estado de Nueva York, debido a no haber enviado la suma completa de dinero que era necesaria para obtener dicha certificación. Basándose en esta declaración, se suspendió la vista, con la objeción del demandado.

En el día señalado al efecto, continuó la vista y el demandante siguió presentando su prueba, así:

10. Certificación expedida por el Secretario de Estado de Nueva York, creditiva de las cláusulas de incorporación de Krajewski-Pesant Co.

11. Una carta que dice:

*"Krajewski-Pesant Co.   New York, July 30, 1910.   Mr. Camilo Hardouin, San Juan, P. R.*

*"Dear Sir: We have received your letter of July 17 with order for some erection material for your account, which we will ship to you as promptly as possible.*

*"Referring to what you tell us about representation in P. R. we have referred this to Mr. A. Musy, as your understanding of the payment of commission is not exactly what we understand ourselves. However, we have no doubt that this can easily be settled, and for this reason we have asked Mr. Musy as he is the one who made the arrangement with you.*

*"The balance of your 6 per cent commission on $179,000 namely $740 (sic), will be paid to you in due time on completion of the work.*

*"We are sending you by this mail foundation plan of the building, to enable you to begin work on this at once next week, we will send you foundation plan of the boilers.*

*"Wishing you good success, we remain, yours truly, Krajewski-Pesant Co. (Sgd.) J. A. Pesant."*

Y 12. Declaración del demandante.

El demandado hizo suyas las cartas de junio 1 y junio 15 de 1910, presentadas por el demandante, e introdujo además la siguiente prueba:

1. Una carta que dice:

*"November 2, 1910. Mr. C. Hardouin, Río Piedras, P. R.*

*"Dear Sir: I have received your letter of October 22nd. The $740 commission which remain due will be paid to you by Messrs. Villamil & Co. I have written to them by this mail in regard to this matter. Referring to the commission on traveling cane, which has been sold to Vannina, this machinery is outside of the contract and therefore will be paid at the end of the year, as is customary with our agent. In regard to the terms of agreement, we must say that the wording is not quite clear. What is meant is this: We will pay you a monthly salary of $300 (three hundred dollars); from the 1st of January, 1911, to the 30th of June, 1911; all traveling expenses to be paid by you. We will also allow you a commission of 3% (three per cent) on all the sales by you and Mr. Musy in Porto Rico. When your commission on the total of the yearly sales, on basis of 3 per cent, exceed your salary of $1,800 we will pay you a 3%. (three per cent) commission on any sum in excess of said salary. I have not written to you about this before, as I understood from Mr. Musy that he had explained to you this matter fully. I hope that the erection of the machinery is going up without difficulty, and that everything will be ready in time. Yours very truly, Krajewski-Pesant Co. (Sgd.) J. Pesant."*

2. Otra carta fechada el 15 de noviembre, 1910, que dice:

"Tengo el honor de acusaros recibo de vuestra atenta del 2 del corriente y os doy las gracias por haber arreglado la cuestión de los $740; la casa de Villamil ajustándose a las instrucciones me ha avisado que acreditaban esa cantidad a mi cuenta; en lo que concierne a los términos de nuestro contrato con respecto a la agencia de vuestra casa en Puerto Rico, si comprendo bien la oferta formulada por Vds. en inglés, se me concederá una comisión de 3 por ciento sobre todos los negocios realizados en Puerto Rico y me garantizan

Vds. un mínimum de $300 mensuales durante el tiempo estipulado por nosotros cada año; ejemplo:

1º. Cifra anual de comisión al 3 por ciento_____ $3,700.00
    Suma a pagar al Sr. Hardouin_____ 3,700.00
2º. Cifra anual de comisión, 3 por ciento_____ 2,800.00
    Suma a pagar a Mr. Hardouin_____ 3,600.00
    (Suponiendo que el término estipulado sea de 12 meses.)

"El mínimum de $300 mensuales me será pagado bajo la forma de mensuales durante el número de meses fijado en cada año; tiempo estipulado para el primer año; seis meses, de modo que los dos casos arriba expresados por suma a pagar serían respectivamente por el primer año; tres mil setecientos dollars o dos mil ochocientos dollars; el primer año según lo convenido, empieza el primero de julio de mil novecientos diez al 30 de junio de 1911, siendo renovable el convenio todos los años; le agradeceré mucho me informe si estamos bien de acuerdo a fin de terminar este asunto."

3. Dos certificados otorgados ante notario por los cuales J. McCall, secretario que fué de la demandada, afirma que ésta cesó de hacer negocios y de tener propiedades desde mayo, 1912, habiendo cedido todas sus propiedades, derechos y acciones a otra corporación distinta incorporada en el Estado de Delaware desde el mes de mayo de 1912.

4. Declaración de José León Núñez, socio de Sucesores de L. Villamil & Cía., que en esencia dice que la casa de que es socio, es un mero agente fiscal de la demandada. Una parte de su declaración copiada textualmente, es como sigue:

"Dice que de la nueva corporación no ha actuado como agente. Que esa nueva corporación o las dos corporaciones consolidadas han seguido haciendo negocios en esta Isla de Puerto Rico, representada dicha corporación consolidada por él."

El demandante presentó como prueba de *rebuttal* su propia declaración, y el juicio quedó entonces concluso para sentencia, que fué dictada, como indicamos al principio, en favor del demandante, el 29 de mayo de 1914.

La sociedad demandada y apelante señala en el alegato presentado ante esta Corte Suprema, la comisión de dos errores por parte de la corte sentenciadora, a saber:

1, al desestimar la moción para dejar sin efecto el emplazamiento, y

2, al declarar probado que la demandada celebró un contrato con el demandante por el cual se obligó a pagarle $300 mensuales desde enero de 1911 hasta junio del mismo año y a abonarle 3 por ciento de comisión sobre todas las ventas que hiciera en la isla, así como a pagarle el 6 por ciento de comisión sobre el valor total de la maquinaria de la Central Vannina.

Examinemos el primer error, o sea el relativo a si la corte de distrito adquirió o no jurisdicción sobre la persona del demandado.

A nuestro juicio no es necesario considerar si el emplazamiento se hizo o nó debidamente. Basta tener en cuenta los actos de la propia demandada ejecutados dentro del pleito, para concluir que quedó sometida a la jurisdicción de la corte. La demandada contestó la demanda en su fondo e intervino directamente en el juicio, y toda la jurisprudencia está conforme en que cuando concurren esas circunstancias, la parte que así actúa no puede alegar la carencia de jurisdicción de la corte por defectos en el emplazamiento.

"Es suficiente decir en el presente caso, que el demandado por el hecho de contestar la demanda en sus méritos, renuncia a cualquier objeción que pudiera haber tenido por motivos de defectos en el emplazamiento o en su diligenciamiento." *Desmond* v. *Superior Court of S. F.,* 59 Cal., 274, 275.

"Admitiendo que el emplazamiento fuese defectuoso, el demandado contestando en los méritos, renuncia a sus objeciones en cuanto a todos los defectos del mismo." *Sears* v. *Starbird,* 78 Cal., 225, 231.

"Si una parte comparece especialmente, y pide que se declare la nulidad del emplazamiento por insuficiencia o irregularidades en el mismo, y después comparece de una manera general y opone excepción previa o contestación a la demanda, renuncia sus derechos de atacar la irregularidad o insuficiencia en el emplazamiento." *Morris* v. *Miller,* decidido por la Corte Suprema de Idaho en abril 6, 1895, y reportado en 40 Pac. Rep., 60.

"La radicación de una contestación en los méritos, impide cualquier objeción al emplazamiento o a la jurisdicción de la corte sobre

la persona del demandado. En virtud de la comparecencia general y voluntaria del demandado, todas las objeciones al emplazamiento y su diligenciamiento, y a la jurisdicción de la corte sobre la persona del demandado, se entienden renunciadas, y la radicación de una excepción o de una contestación a la demanda, constituye la comparecencia general." *Union Pacific R. R. Co.* v. *De Busk,* decisión de la Corte Suprema de Colorado, reportada en 3 L. R. A., 350.

Véase también el caso de *Hernaíz, Targa & Cía.* v. *Vivas,* 20 D. P. R., 106.

Estudiemos el segundo error. Hemos examinado cuidadosamente toda la prueba practicada y opinamos con el juez sentenciador que no puede negarse la existencia de los contratos alegados en la demanda.

El demandante explica en su declaración prestada bajo juramento en el acto de la vista, el origen de las transacciones. Dijo que él fué uno de los promovedores de la Central Vannina; el que hizo los estudios y dió los pasos preliminares para su fundación. Que al enterarse de ello, los ingenieros de casas constructoras de los Estados Unidos "andaban detrás de él haciéndole ofertas." Que uno de esos ingenieros fué Musy, el representante de Krajewski-Pesant Co., quien le dijo que quería retirarse a los Estados porque a su familia no le gustaba vivir en Puerto Rico, y que si le daba el pedido de la Central Vannina, le pagaría el 6 por ciento del mismo y le nombraría en su lugar agente de Krajewski-Pesant Co. El demandante aceptó y entonces fué que Musy escribió al demandante la carta de junio 1, 1910, que se ha transcrito.

Dicha carta hace referencia a dos transacciones distintas, a saber: la agencia general de Krajewski-Pesant Co., en Puerto Rico, bajo la base de un sueldo mensual de $300 y una comisión de 3 por ciento sobre las ventas que se llevaran a efecto, y el negocio sobre la venta de los materiales para la construcción de la Central Vannina, situada en Río Piedras, P. R.

Procederemos al estudio de la prueba con respecto a la primera de dichas transacciones. A nuestro juicio, el contrato quedó consignado por escrito con suficiente claridad en la carta de 1º. de junio de 1910, siendo ratificado por la sociedad demandada, por la carta de 15 de junio de 1910, y aceptado por el demandante.

También demuestra la prueba—declaración del demandante—que éste estuvo siempre dispuesto a cumplir con el contrato y que si no vendió artículos de los demandados en Puerto Rico, en el período que media desde el 1º. de enero de 1911 al 30 de junio del mismo año, se debió a la actitud asumida por los demandados retirándole su representación, según aparece de la carta de 28 de diciembre de 1910 dirigida por la sociedad demandada al demandante.

¿Pudo la sociedad demandada proceder en la forma en que lo hizo, sin incurrir en responsabilidad para con el demandante?

El contrato que estamos examinando puede calificarse como constitutivo de un arrendamiento de servicios, siéndole por tanto aplicables los artículos 1486 y siguientes del Código Civil. Ambas partes contrajeron obligaciones recíprocas y si una de ellas dejó de cumplir sin justa causa las que había asumido, está obligada a indemnizar a la otra los daños y perjuicios que con tal motivo le causara.

Quedan sujetos, dice el artículo 1068 del Código Civil, a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, *y los que de cualquier modo contravinieren al tenor de aquéllas.*

En el caso de *Portela* v. *Porto Rican American Tobacco Company,* 4 D. P. R., 30, 2ª. edición, esta Corte Suprema resolvió que

"en los contratos de arrendamiento de servicios, la prestación de los mismos es requisito indispensabe para tener derecho al estipendio, y el que no los presta, puede despedirse o ser despedido antes del

cumplimiento, siendo solo la indemnización el derecho que tiene el que presta los servicios, si fuere despedido sin justa causa.''

En el curso de la opinión emitida en el caso de *Núñez* v. *Soto Nussa*, 14 D. P. R., 199, 202, se dijo:

''Y el derecho de un empleado, que se compromete a prestar sus servicios personales, de salir del servicio de su principal, descansa sobre la misma base que el derecho del principal de dejarlo cesante cuando se trata de servicios personales. Si el salir del servicio en el primer caso, y el dejar a uno cesante en el segundo, es una infracción del contrato existente entre las partes, la persona que sufra perjuicios por motivo del quebrantamiento de contrato, tiene su acción para recobrar daños y perjuicios, y este es su remedio adecuado.''

Y en el caso de *Padró* v. *Valdés*, 16 D. P. R., 326, 331, la corte se expresó así:

''El demandante alegó ante este tribunal que su acción era una de negligencia, pero la alegación que se hace en la demanda es de no haberse cumplido un contrato; en otras palabras, un incumplimiento de contrato. El demandante, a lo sumo, tendría derecho por el incumplimiento de este contrato a recobrar el salario de un mes, si todo lo que él alega en su demanda fuera cierto, pero en ningún caso podría él ser indemnizado por las otras cosas en las cuales funda su demanda porque siempre estaría en las atribuciones legales del demandado el no utilizar más los servicios del demandante al terminar un mes de servicios. El demandante no alegó ni trató de probar que existiera un contrato de servicios por un período mayor.''

El derecho a pedir la indemnización, es pues, evidente, de acuerdo con la ley y la jurisprudencia. Mas ¿se han probado los daños y perjuicios?

El artículo 1073 del Código Civil prescribe:

''La indemnización de daños y perjuicios comprende, no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor, salvas las disposiciones contenidas en los artículos siguientes.''

¿Cuál fué la ganancia dejada de obtener en este caso? Hemos consultado la jurisprudencia del Tribunal Supremo

de España y no hemos encontrado ninguna decisión que resuelva el punto concreto a que nos referimos.  En *Padró* v. *Valdés,* esta Corte Suprema de Puerto Rico dejó entrever su criterio, conforme con la jurisprudencia americana que consideramos aplicable por estar substancialmente en armonía con lo preceptuado en la ley.

Dicha jurisprudencia, según la resume Tiffany, es como sigue:

"Cuando el contrato de arrendamiento de servicios es por término definido y el principal sin haber justa causa revoca la facultad que ha sido conferida al empleado o de otro modo da por terminado el contrato, el empleado tiene derecho a utilizar los remedios que ordinariamente existen para los casos de violación de contratos.  De igual manera que un sirviente que ha sido despedido sin motivo alguno de su empleo, puede el empleado adoptar cualquiera de estos dos remedios: (1) Puede considerar que el contrato ha sido rescindido y demandar a su principal por el valor razonable (*quantum meruit*) de cualesquiera servicios que realmente haya prestado, basándose en la existencia de un contrato tácito o quasi-contrato; (2) puede establecer una acción fundada en el contrato original con el objeto de ser indemnizado en daños y perjuicios por la pérdida a que pueda dar lugar su violación.

"Si opta por el segundo remedio, puede demandar inmediatamente y recobrar los daños que puedan ocasionársele por su incumplimiento, o esperar hasta el vencimiento del término y establecer una acción por los daños reales que haya sufrido. Ya establezca la acción inmediatamente o bien la interponga después de vencido el término, la cuantía de los daños es, *prima facie,* la suma de la remuneración estipulada en el contrato, pudiendo el demandado obtener que se rebaje dicha cuantía mediante prueba de la cantidad que el empleado en el primer caso hubiera podido ganar ejercitando la debida diligencia al solicitar empleo en un negocio semejante, y en el otro caso en la suma que en el ínterin realmente ha ganado o que podría haber ganado mediante diligencia razonable.  Incumbe al demandado la obligación de probar que el demandante ha conseguido o pudo haber conseguido otro empleo.  Pero aunque el empleado que ha sido despedido tiene el deber de buscar otro empleo corriendo así el riesgo de que la cantidad que trata de recobrar sea reducida en

la suma que por ello hubiera podido ganar, no está obligado a buscar empleo de distinta naturaleza o en otra localidad, o con una persona que no le convenga.

"Se resolvió anteriormente en Inglaterra que un sirviente o empleado que había sido despedido sin motivo alguno de su empleo podría considerar que el contrato continuaba en vigor, y por el hecho de estar dispuesto a cumplir con el mismo hasta el vencimiento del término del contrato, tener entonces el derecho a recobrar sus salarios por dicho término, fundándose en que había suministrado los servicios. Esta doctrina ha sido desechada en Inglaterra y generalmente en los Estados Unidos, si bien prevalece en algunos estados. Sin embargo, según la doctrina que generalmente ha sido establecida, a menos que el empleado opte por considerar el contrato como rescindido, su derecho queda limitado a una acción por incumplimiento del contrato, y aunque en dicha acción la remuneración estipulada es, *prima facie*, la cuantía de la indemnización, ésta puede quedar reducida, como ya se ha dicho, en la suma de lo que ha ganado o ha debido ganar el empleado." Tiffany on Agency, pp. 448, 449, 450 y 451.

Por virtud de todo lo expuesto, debemos concluir que el demandante tiene en verdad el derecho que le reconoció la corte sentenciadora, o sea el de obtener, como compensación de los daños y perjuicios sufridos, el sueldo dejado de ganar durante los seis meses en que hubiera estado vigente el contrato, a no haber sido por el acto de la demandada; ya que ésta no presentó prueba alguna demostrativa de que la conducta del demandante fuera tal que la obligara a actuar en la forma en que lo hizo, ni de que el demandante pudo obtener u obtuvo determinada ganancia que debiera deducirse del sueldo dejado de percibir por el mismo.

Examinemos ahora la prueba con respecto a la segunda transacción. Cuando se practicaba la evidencia del demandante ocurrió lo que sigue:

"*Demandante.*—Dice que tiene los dos presupuestos; si el señor juez admite la prueba en este sentido. Que había presentado a la corte el primer presupuesto donde se conviene la montura de la Central Vannina en $169,400, y que después de ese se hizo otro nuevo que ascendió a $212,000.

"*Demandado*.—Admitió que hubiera un presupuesto de $169,400 como primer presupuesto, que después se aumentó a la suma anteriormente manifestada, pero que el punto que sostiene es que en esa carta que se dice contener el contrato entre ambas partes en esta acción, se dice: 'Vd. se compromete a dar a la casa de Krajewski-Pesant Co. el material para la central de Río Piedras, estipulando una comisión especial del 6 por ciento sobre el montante de $169,400.' "

Como se ve, no hay cuestión alguna con respecto a que el presupuesto de la Central Vannina que al principio fué de unos $169,000 se aumentó luego a $212,000, hecho que se explica por el demandante diciendo que el primer presupuesto se hizo para una central que moliera 500 toneladas de caña al día, resolviéndose luego aumentar la capacidad productiva de la misma, lo que produjo como natural consecuencia el aumento del costo de las maquinarias.

El haberse consignado en la carta de 1º. de junio de 1910 la cantidad de $169,400 como base para calcular la comisión, introduce ciertamente alguna duda en la interpretación del contrato. Pero esa duda desaparece cuando se considera que también se consignó en dicha carta que el demandante se comprometía a hacer las gestiones necesarias para que la casa de Krajewski-Pesant Co., recibiera la *orden completa* para el material de la central de Río Piedras. Así lo entendió la corte sentenciadora, expresando su pensamiento en los siguientes términos:

"Interpretando ese contrato, llegamos a la conclusión de que ambas partes, en el momento de formalizarlo no tenían en la mente el estipular una comisión sobre una cantidad determinada, sino sobre el valor total de las maquinarias que se vendiesen y si se fijó aquella cantidad en el contrato fué porque en el momento de celebrarlo a ella ascendía el importe total del presupuesto de la Central Vannina."

Examinada la carta de 15 de junio de 1910, no puede sostenerse que contenga una ratificación clara de la segunda transacción que estamos investigando. Si la prueba del demandante se hubiera limitado a la presentación de esas dos

cartas, a nuestro juicio no hubiera podido dictarse sentencia favorable para él en cuanto a la segunda transacción. Pero se presentaron otros documentos, a saber: la carta de 31 de julio de 1910 dirigida por la sociedad demandada al demandante y la carta de noviembre 2, 1910, dirigida también por la sociedad demandada al demandante y presentada por la misma parte demandada como prueba en el acto de la vista.

Analizando esas dos cartas en relación con la de 1º. de junio tantas veces citada y con la declaración del demandante, se observa que el demandante percibió alrededor de $10.000 por el 6 por ciento de comisión de la venta del material de la Central Vannina, calculado sobre la base de los $169,000 primeramente fijada, y que después el demandante reclamó de la sociedad demandada una suma mayor, basándose en que la venta había ascendido no a 169,000 sino a $179,000 y la sociedad demandada estuvo conforme en pagar el 6 por ciento de ese exceso. Este acto por parte de la demandada revela que ella misma interpretó el contrato en la forma alegada por el demandante, y si por otra parte aceptó que el presupuesto final ascendió no a $10,000, sino a unos $40,000 más que el primitivo, no vemos cómo, lógicamente, puede negarse a pagar la comisión sobre la diferencia real y positiva entre el primero y el último presupuesto. "El comitente estará obligado a abonar al comisionista el premio de comisión, salvo pacto en contrario," dice el artículo 277 del Código de Comercio.

Por virtud de todo lo expuesto, opinamos que la sentencia apelada es justa y debe confirmarse.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.