Villar & Co., Inc., demandante-apelante-apelada, *v.* Carlos Conde Casariego, demandado-apelado-apelante.

No. 3901.—*Visto:* Febrero 24, 1927. *Resuelto:* Febrero 9, 1928.

1. Corporaciones—Facultades y Responsabilidades—Contratos y Obligaciones o Deudas *(Indebtedness)*—Contratos o Convenios Previos a la Incorporación—Su Ratificación o Confirmación y Efecto. — Cuando dos personas contratan en beneficio de una corporación que no existe a la fecha del contrato y por actos posteriores de la corporación, ya formada, ésta ratifica y confirma dicho contrato, ella, al utilizar los servicios de una de dichas personas como su administrador a tenor de aquel contrato, está impedida de negar la existencia de éste, y la corporación queda obligada por el mismo.

2. Corporaciones—Funcionarios *(Officers)* y Agentes—Elección o Nombra-

MIENTO, CONDICIONES *(Qualifications)* Y TÉRMINO DEL CARGO *(Tenure)*—
NOMBRAMIENTO DE FUNCIONARIOS O EMPLEADOS SUBALTERNOS — ESTOPPEL
PARA IMPUGNAR EL EMPLEO DE UNO COMO ADMINISTRADOR *(Manager)* [1] DE
LA CORPORACIÓN:—Expedidas acciones del capital de una corporación a nom-
bre de una persona, a fin de que pudiera ser administrador o director de
la corporación, aún cuando el título equitativo *(equitable ownership)* de
dichas acciones esté en otro de los incorporadores a quien le fueron tras-
pasadas, la compañía está impedida de alegar que aquella no fuera dueña
de dichas acciones con el fin de ser tal administrador de la corporación,
especialmente cuando incumbía a la corporación, de acuerdo con un contrato
existente, hacer posible que ella fuera tal administrador o director.

3. PATRONO Y EMPLEADO—DE LA RELACIÓN—TERMINACIÓN Y DESTITUCIÓN *(Dis-
charge)*—ACCIONES POR QUEBRANTAMIENTO DEL CONTRATO AL EMPLEADO—
EVIDENCIA—SU SUFICIENCIA.—En el caso de autos se convino el pago de un
sueldo por servicios a prestar durante un número de años a un tanto anual.
Despedido de su empleo el obligado a la prestación de dichos servicios, *se
resolvió:* que los cargos formulados contra él eran insuficientes y no cons-
tituían excusa legal alguna para que se le negara el pago de la suma de-
jada de percibir, por los servicios a prestar, en concepto de daños y per-
juicios.

4. PATRONO Y EMPLEADO—DE LA RELACIÓN—TERMINACIÓN Y DESTITUCIÓN *(Dis-
charge)*—ACCIONES POR QUEBRANTAMIENTO DEL CONTRATO AL EMPLEADO—
DEFENSA EN GENERAL—QUIEBRA DEL EMPLEADO.—El procedimiento de quie-
bra generalmente no exime a una persona que está obligada de otro modo
con el quebrado de cumplir su parte en un contrato legal.

5. PATRONO Y EMPLEADO—DE LA RELACIÓN—TERMINACIÓN Y DESTITUCIÓN *(Dis-
charge)*—ACCIONES POR QUEBRANTAMIENTO DEL CONTRATO AL EMPLEADO—
EVIDENCIA—PESO DE LA PRUEBA—OBTENCIÓN DE OTRO EMPLEO.—Cuando una
persona es despedida de su empleo, él tiene derecho, nominalmente y *prima
facie*, a recibir remuneración por todo el período que abarca el contrato y
el peso de la prueba recae sobre aquél que despide al empleado para de-
mostrar que éste obtuvo otro empleo o que pudo haberlo obtenido.

6. CONTRATOS—CUMPLIMIENTO O QUEBRANTAMIENTO *(Breach)*—CUMPLIMIENTO DE
LAS OBLIGACIONES IMPUESTAS POR EL MISMO—PRUEBA DEL CUMPLIMIENTO—
SU SUFICIENCIA.—Cuando se transfiere, entre varios, una representación que
la representada no acepta y confiere su agencia a otro, y a virtud de ello
el precio del contrato de venta queda reducido en una cantidad que el ven-
dedor viene obligado a devolver de no restablecerse la representación per-
dida, el hecho de obtener el vendedor una representación de otra compañía
tan buena como la perdida no equivale a obtener de nuevo la representación
de dicha compañía perdida ni constituye defensa alguna para negar el pago
de la cantidad a que venía obligado el vendedor, especialmente cuando se
resolvió, por la corte inferior, que la nueva compañía fué más bien conse-
guida en virtud de la intervención de persona distinta al vendedor.

7. QUIEBRAS—DERECHOS, REMEDIOS Y REHABILITACIÓN *(Discharge)* DEL QUEBRADO
—DEUDAS AFECTADAS POR LA REHABILITACIÓN—DEUDAS NO INCLUIDAS DEBIDA-
MENTE PARA SER PROBADAS—CONOCIMIENTO DEL ACREEDOR DEL PROCEDI-
MIENTO DE QUIEBRA.—Cuando un acreedor tiene conocimiento real de una
deuda probable *(provable)* la rehabilitación generalmente exime de su pago
al quebrado.

8. LIBELO Y CALUMNIA—ACCIONES—DAÑOS Y PERJUICIOS—EN GENERAL.—Cuando
   se reclaman daños y perjuicios por libelo al aprobar una corporación reso-
   lución despidiendo un empleado y haciéndole acusaciones, aún cuando las
   palabras de la publicación sean en realidad libelosas, en ausencia de prueba
   de que con ello se causaran daños y perjuicios, no procede la concesión de
   aquellos.

SENTENCIA de *Charles E. Foote,* J. (San Juan, Primer Distrito),
   declarando con lugar la demanda y la contrademanda en parte,
   sin costas. *Revocada* en parte y *confirmada.*

*J. Texidor* y *R. Cuevas Zequeira,* abogados del demandante; *F. Soto
   Gras,* abogado del demandado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tri-
bunal.

Carlos Conde, dueño de una finca y representante de va-
rias compañías de vapores y firmas comerciales, en 3 de
diciembre de 1920 efectuó un contrato en virtud del cual la
finca y la "representación" de varias compañías y casas
fueron vendidas a Manuel Mendía. El convenio de Conde
era que transferiría la propiedad a Mendía o a la corpora-
ción que éste organizara. Se convino además que Conde
prestaría sus servicios a la nueva compañía por un período
de cinco años, recibiendo por ello un sueldo de $6,000 anuales.

Entre las agencias transferidas en dicho convenio estaba
la Red D Line S. S. Co. Esta compañía se negó a seguir
el convenio hecho por Conde y posteriormente cedió su re-
presentación a otra persona. Entonces las partes agrega-
ron la siguiente estipulación al contrato del 3 de diciembre
de 1920:

"Cláusula adicional (5o.). Teniendo en cuenta que la *Red D.
Line* ha transferido a distinta persona su representación en esta Isla,
el contrato que precede queda enmendado en el sentido de reducir
el precio de la venta y cesión de la suma de Quince Mil ($15,000.00)
dollars; pero, esto no obstante, el Sr. Conde percibirá la cantidad
total convenida, debiendo reintegrar los indicados Quince Mil
($15,000.00) dollars el Sr. Conde al Sr. Mendía, en dos plazos sin
intereses, de Siete Mil Quinientos ($7,500.00) dollars cada uno ven-
cederos en dos de enero de los años 1922 y 1923, por cuyos plazos
suscribirá el Sr. Conde dos pagarés comerciales."

"Es entendido que si la *Red D Line* desistiere de transferir su agencia en esta Isla a otra persona, esta enmienda quedará sin valor ni efecto, debiendo el Sr. Mendía devolver cancelados al Sr. Conde los pagarés antes referidos.—San Juan, P. R., 31 de Dicbre., 1920. Firmados: C. Conde.—M. Mendía.''

Por este contrato se convino en que Conde recibiría $40,000. Conde recibió materialmente de Mendía o de la compañía los $40,000 estipulados en el contrato original. Otorgó a Mendía los dos pagarés de $7,500 cada uno, los cuales Mendía endosó a Villar & Co., Inc., que fué la persona que se tuvo en mente al efectuarse el contrato y es la demandante en el presente caso.

Estos pagarés nunca fueron satisfechos por Conde, y el 6 de febrero, 1923, Villar & Co., Inc., lo demandó para cobrarlos. Conde levantó varias defensas y también presentó una contrademanda por la suma de $17,500 por servicios prestados, toda vez que mucho antes de haber expirado el término fijado en el contrato de diciembre 3, 1920, él había sido despedido de la casa de Villar & Co., Inc. Conde también presentó una reclamación por daños y perjuicios por libelo.

La Corte de Distrito de San Juan dictó sentencia a favor de Villar & Co., Inc., por los dos pagarés ascendentes a la suma de $15,000 más los intereses, dictó sentencia a favor de Conde por la suma de $17,500 en concepto de servicios prestados, y resolvió que los daños y perjuicios por libelo no habían sido probados. Ambas partes han apelado.

Como estamos enteramente de acuerdo con la corte inferior en cuanto a la sentencia dictada contra Villar & Co., Inc., consideraremos primeramente la apelación interpuesta por dicha corporación.

La cláusula del contrato original a considerar leía como sigue:

"4.—A su vez, Carlos Conde, personalmente, se compromete y obliga a prestar sus servicios como director o manager de la corporación que se forme y a quien se trasmiten las cesiones de agencias

y comisiones material de la precedente cláusula, por un período de cinco (5) años y mediante un sueldo de seis mil dólares ($6,000.00) cada año, siendo entendido que la prestación de dichos servicios se efectuará en relación con los negocios ahora cedidos, y con otros más que en el curso de su vida legal, y por dicho período la corporación dicha pudiera realizar."

Si bien la persona que quedaba obligada por esta cláusula del contrato lo era nominal y gramaticalmente Conde, sin embargo, no hay duda alguna de que Villar & Co., Inc., al aceptar la venta hecha por Conde a Mendía o a la compañía, igual o recíprocamente convino en pagarle a Conde la suma de $6,000 durante la vigencia del contrato, siempre que, por otra parte, Conde cumpliera con los términos del mismo. La intención de Mendía claramente era que Carlos Conde ayudara a la compañía a hacer que las agencias transferidas resultaran buenas y lucrativas. Carlos Conde hacía negocios bajo la razón de Villar & Co. La nueva compañía adoptó el nombre bajo el cual él había estado haciendo negocios y agregó la palabra "Incorporada" a la razón social. A muchos clientes les gusta continuar efectuando negocios con la persona con quien han tenido relaciones, y la personalidad y buen nombre (*good will*) de Conde desempeñaban algún papel en la nueva entidad.

[1] No tenemos duda alguna de que Mendía y Conde podían contratar en beneficio de un tercero que en realidad no existía entonces, si esa persona aceptaba más tarde el contrato. Los actos posteriores de la corporación al aceptar las agencias y al emplear a Conde como administrador, equivalían a una novación, ratificación y confirmación del contrato. Habiendo utilizado Villar & Co., Inc., los servicios de Carlos Conde como administrador, estaría impedida por sus propios actos de negar la existencia del contrato. Después de todo, una corporación tiene alguna relación con sus incorporadores, y si los incorporadores, como en el presente caso, efectúan un contrato con el consentimiento de todas las personas envueltas, la corporación naciente puede ser obligada.

[2] Se le ha dado gran énfasis al hecho de que Carlos Conde en realidad nunca fué dueño de acción alguna de la corporación, y que las cláusulas de incorporación exigían que el administrador de la misma fuese uno de sus directores. El director de una corporación debe poseer acciones. Se expidieron cinco acciones del capital a nombre de Carlos Conde, y éste se las endosó en blanco a Mendía. Se hizo esto con el fin de que Carlos Conde pudiera literalmente cumplir con las cláusulas de incorporación, pero es cierto que Mendía siempre retuvo por lo menos el título equitativo (*equitable ownership*) de las cinco acciones. Mendía era el presidente de la compañía, y nos inclinamos a convenir con la corte inferior y con Conde en que la compañía estaría impedida de todos modos de alegar que Conde no era dueño de cinco acciones con el fin de ser administrador de la corporación. Con este arreglo, Conde no cometió fraude alguno contra la compañía ni contra el público. Si las consecuencias afectaban al público, entonces se podía resolver que Conde era el dueño legal de las cinco acciones, y sería Mendía el perjudicado en su título equitativo.

Además, si se examinan los términos de la cláusula 4, *supra,* literalmente se verá que Carlos Conde convino en prestar sus servicios como director o administrador y podría decirse que, de acuerdo con los términos del contrato, incumbía a la compañía hacer posible que Carlos Conde fuera tal director o administrador; de lo contrario, la compañía estaría perpetrando un fraude al aceptar las agencias. El pago de un sueldo por servicios a prestar fué lo que se tuvo en mente y era la intención de las partes, especialmente de Villar & Co., Inc.

[3, 4] Creemos que se desprende claramente de la prueba presentada que Conde fué en realidad despedido de su empleo a causa de diferencias irreconciliables habidas entre él y Mendía. Convenimos con la corte inferior en que los cargos formulados no constituían excusa legal alguna para

negarse a pagarle daños y perjuicios a Conde. No halla-
mos prueba suficiente de que Conde desatendiera grave-
mente los negocios de la compañía.

El que se negara a pagar los $15,000 representados por
los pagarés no constituía razón alguna. Puede que no tu-
viera el dinero, según tiende a demostrarlo su quiebra pos-
terior y tal como lo indica en algo el hecho de que no com-
prara cinco acciones de la corporación. Conde había otor-
gado los pagarés y había cumplido, por lo menos literal-
mente, con su parte del contrato. El que dejara de satis-
facer una deuda no sería excusa alguna para despedirlo.
Aparentemente, él creyó de buena fe que tenía defensas le-
gítimas, y una de ellas, según veremos, era de hecho válida.
El que creyera que los pagarés no eran una obligación exis-
tente queda además evidenciado por el hecho de que no los
incluyó en su petición de quiebra voluntaria radicada pos-
teriormente. Aunque técnicamente él no tenía derecho a
insistir en que había cumplido el contrato, por la razón,
según él sostenía, de que había hallado un substituto para
la Red D Line, no obstante, sus servicios al ayudar a Vi-
llar & Co., Inc., a obtener la representación de otra compa-
ñía podrían fácilmente ser tenidos en cuenta por un pa-
trono generoso, y probablemente así lo hubiesen sido si
Mendía y Conde hubieran seguido en buenas relaciones.

Tampoco fué la radicación de la petición de quiebra vo-
luntaria una razón para no cumplir con los términos del
contrato. Mientras la ley de quiebra permita que un deu-
dor insolvente obtenga la condonación de sus deudas decla-
rándose en quiebra, sería contrario a la política pública re-
solver que un procedimiento de quiebra eximiría a una per-
sona que está obligada de otro modo con el quebrado de
cumplir su parte en un contrato legal.

No hallamos prueba suficiente de que Conde no fuera un
empleado fiel a la corporación. Pudo haber ciertos indicios,
en opinión de Villar & Co., Inc., pero no hubo suficiente
prueba. La demandante y apelante no nos convence de que

los robos cometidos por otras personas, o ciertos deterioros o pérdidas, se debieran a negligencia tal de parte de Conde que justificara su remoción.

[5] Una cuestión presentada que es algo más seria es la apreciación del valor de los daños y perjuicios. Carlos Conde fué despedido de su puesto de administrador antes de que expirase su término, y cuando aún le quedaba por percibir la suma de $17,500 por concepto de servicios a prestar. La teoría de Villar & Co., Inc., es que cuando Conde fué despedido, tenía, de acuerdo con varios artículos de los códigos Civil y de Comercio, derecho a percibir daños y perjuicios solamente, y que él no ha probado tales daños. Aceptaremos lo que hemos considerado y consideramos como el peso de las autoridades, según lo alegó el apelado Conde, que cuando una persona es despedida de su empleo, tiene derecho, nominalmente y *prima facie,* a recibir remuneración por todo el período que abarca el contrato, y que el peso de la prueba recae sobre la persona que despide al empleado para demostrar que éste obtuvo otro empleo o que pudo haberlo obtenido. *Hardouin* v. *Krajewski,* 22 D. P.R. 689. Véase, entre otras autoridades citadas en el alegato complementario de Carlos Conde, *Labatt sobre Patrono y Empleado,* tomo 1, pág. 1132.

[6] Llegamos ahora a la apelación interpuesta por Conde. No podemos convenir con él en que el que se obtuviera otra compañía tan buena como la Red D Line equivalía legalmente a obtener de nuevo la representación de dicha compañía que se había perdido. Esta era una de sus defensas para negarse a pagar los $15,000 reclamados por Villar & Co., Inc. El contrato expresamente exigía el restablecimiento de la representación de la Red D Line, y en aquel entonces las partes no tomaron en consideración substituto alguno de dicha compañía. Aparecería que en la época en que obtuvo la representación de otra compañía, Conde de hecho era empleado de Villar & Co., Inc., la que tenía derecho al beneficio de sus servicios. Además, la corte llegó

a la conclusión, y no vemos que lo hiciera erróneamente, de que la nueva compañía fué conseguida más bien en virtud de la intervención de Mendía que de la de Conde.

Tampoco podemos convenir con Conde en que la cláusula adicional del contrato copiada anteriormente no fuera obligatoria para él. La mejor manera de considerar esta cláusula adicional es considerándola como una enmienda al contrato, hecha para cubrir el detrimento sufrido por Villar & Co., Inc., al no obtener la agencia de la Red D Line propuesta en el contrato.

[7] Los pagarés fueron otorgados por Conde a favor de Mendía. Ellos llegaron a ser en realidad obligaciones, exigibles independientemente, y Mendía los endosó a Villar & Co., Inc. Como eran obligaciones exigibles independientemente, nos sentimos obligados a resolver que los pagarés quedaron extinguidos por la rehabilitación de quiebra que Conde solicitó y obtuvo bastante tiempo después del otorgamiento del contrato y de los pagarés. La corte inferior omitió considerar este punto levantado por el demandado original, y Villar & Co., Inc., no lo ha discutido. Tanto el apelante Conde como nuestras propias investigaciones nos han convencido de que la defensa es buena. Cada parte probablemente ha levantado toda defensa concebible contra la reclamación de su contrario, y nos sentimos obligados a resolver éste a favor de Conde.

La sección 17 de la Ley Nacional de Quiebras dispone:

"Deudas no afectadas por la rehabilitación.—En una quiebra la rehabilitación eximirá al quebrado de todas sus deudas probables, excepto: (1) Las contraídas por concepto de contribuciones impuestas por los Estados Unidos, el estado, condado, distrito o municipio en que reside el deudor; (2) la responsabilidad incurrida al obtener propiedad fraudulentamente o en virtud de falsas representaciones, o por daño voluntario y malicioso a la persona o propiedad de un semejante, o por pensión alimenticia adeudada a la esposa o que pueda adeudarle en el futuro, o por el mantenimiento o sostén de la esposa o hijo, o por la seducción de una mujer soltera, o por comercio carnal ilegal; (3) las que no hayan

sido debidamente incluídas a tiempo para que se puedan probar y conceder, con el nombre del acreedor, si el quebrado lo conociere, a menos que tal acreedor tuviera aviso o conocimiento real del procedimiento de quiebra; o (4) las creadas por fraude, malversación, apropiación indebida o desfalco cometidos por el deudor mientras actúa como funcionario o en cualquiera otra capacidad fiduciaria.''

De acuerdo con la cláusula 3, las deudas que no han sido debidamente incluidas a tiempo para que se puedan probar y conceder, no son afectadas por la rehabilitación, a menos que el acreedor tuviera aviso o conocimiento real del procedimiento de quiebra. Hallamos que en el caso de una reclamación corriente que se puede probar, las autoridades sostienen unánimemente que el conocimiento real o la notificación oportuna al acreedor para que radique su reclamación, le impedirán, después de la rehabilitación, de cobrarle al quebrado. *Perry Naval Stores Co.* v. *Caswell,* 63 Fla. 556, 57 So. 662, caso en el cual se resolvió que notificaciones hechas a los principales funcionarios de un banco mientras se estaban haciendo negocios eran notificaciones hechas al banco; *Reinhardt* v. *Friederich,* 58 Ind. App. 425, 108 N. E. 260, y casos allí citados; *Dycus* v. *Brown,* 135 Ky. 140, 28 L.R.A. (N. S.) 190; *Morrison* v. *Vaughan,* 119 App. Div. 184; *Kreitlein* v. *Ferger,* 238 U. S. 35; *Birkett* v. *Columbia Bank,* 195 U. S. 345; *Roig* v. *Barletta,* 28 D.P.R. 603, siendo este último caso uno en que citó el principio, pero en el cual no se demostró que hubiera suficiente notificación.

Las autoridades difieren entre sí respecto a la parte en quien recae el peso de la prueba para demostrar si una deuda fué incluida o no en la lista, y otras cuestiones similares, pero no hay duda alguna de que si un acreedor oportunamente tuvo conocimiento real de una deuda probable, la rehabilitación exime de su pago al quebrado. En el presente caso no pudo haber surgido duda seria alguna en cuanto a que Villar & Co., Inc., tenía completo conocimiento de que había un procedimiento de quiebra pendiente. Sus funcionarios tuvieron intervención en el procedimiento. Se

adoptó como fundamento para despedir a Conde el hecho de que estaba pendiente la petición de quiebra. La compañía en su defensa en este caso dijo que la quiebra de Conde fué una excusa para su remoción.

Si se·alegara que el contrato de diciembre 1920, era una cosa no divisible entre las partes, sin embargo, la reclamación de Conde por los $17,500 no había vencido durante el tiempo en que estuvo pendiente el procedimiento de quiebra. Conde o su fideicomisario no podían, fundándose en los servicios a prestar, defenderse con éxito contra la reclamación de $15,000 de Villar & Co., Inc. No se hubiesen podido presentar reconvenciones mutuas por las dos reclamaciones al tiempo de la radicación de la petición de quiebra o durante el tiempo dentro del cual pudieran presentarse deudas probables.

[8] Conde también presentó una reclamación por libelo, toda vez que la corporación aprobó una resolución con fecha 3 de febrero de 1923, despidiéndolo de su empleo y haciéndole varias acusaciones. No resolvemos que las palabras de esa publicación fueran en realidad libelosas, pero aún si lo fueran lo que la corte inferior resolvió fué que no se probó que se hubieren causado daños y perjuicios, y nosotros tampoco hallamos que esto sucediera.

La sentencia de la Corte de Distrito de San Juan *debe ser revocada* en tanto en cuanto condena a Carlos Conde a pagar la suma de $15,000, y *confirmarse* en todos los demás extremos.

El Juez Asociado Señor Texidor no intervino.

NOTA: En este caso se ha presentado una moción, que está pendiente, pidiendo la reconsideración de parte de la sentencia.