HÉCTOR CAMACHO ARROYO, demandante y recurrido, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrente.

*Número:* RE-89-459 *Resuelto:* 19 de octubre de 1992

*Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Anabelle Rodríguez, Procuradora General Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Comparece ante nos la Oficina del Procurador General en representación del Estado Libre Asociado de Puerto Rico para que revoquemos una sentencia dictada por el Tribunal Superior. La misma declara con lugar cierta demanda sobre incumplimiento de contrato incoada por el Sr. Héctor Camacho Arroyo después de que su contrato de empleo con el Cuerpo de Voluntarios al Servicio de Puerto Rico (Cuerpo de Voluntarios) fuera resuelto antes de su fecha de vencimiento. Por considerar equivocado el dictamen emitido por el foro de primera instancia, revocamos.

I

El Sr. Héctor Camacho Arroyo suscribió un contrato de empleo con el Cuerpo de Voluntarios(1) el 16 de mayo de 1987. El señor Camacho Arroyo se desempeñaría como Coordinador de Servicios Auxiliares para adiestrar jóvenes de residenciales. El contrato era de duración limitada a un (1) año, desde el 16 de mayo de 1987 hasta el 15 de mayo del año siguiente. Ya el señor Camacho Arroyo había trabajado en el Cuerpo de Voluntarios en virtud de un contrato de seis (6) meses suscrito anteriormente. Devengaba un salario que a la terminación del contrato ascendía a $1,100 mensuales.

El 29 de mayo de 1987 las partes suscribieron una enmienda al contrato existente entre ellas. Mediante este acuerdo aclaraban los contratantes la Cláusula 11 de dicho contrato(2) "para hacer constar que EL EMPLEADO reco-

_____

(1) El Cuerpo de Voluntarios al Servicio de Puerto Rico es una entidad gubernamental creada al amparo de la Ley Núm. 1 de 23 de junio de 1985 (18 L.P.R.A. sec. 1411 *et seq.*), y está adscrita a la Oficina del Gobernador.

(2) La Cláusula 11 del contrato de empleo establecía originalmente: "Este contrato de empleo podrá ser resuelto por acuerdo de las partes. Si EL EMPLEADO decidiera resolver el contrato deberá notificar a EL PATRONO con quince (15) días de antelación a la fecha en que se propone rescindir el contrato. EL PATRONO se reserva el derecho y así lo reconoce y acepta EL EMPLEADO, de prorrogar con quince (15) días adicionales a la fecha de efectividad de la resolución del contrato

noce el derecho de EL PATRONO para dar por terminado este contrato antes de su vencimiento, previa notificación con treinta (30) días de antelación a la fecha de terminación". Apéndice, pág. 11. De esta forma el Estado tendría también la facultad de declarar resuelto el contrato antes de culminar su vigencia.

Seis (6) meses después de la enmienda, el 21 de diciembre de 1987, el Cuerpo de Voluntarios —por voz de su Director Ejecutivo— dio por terminado el contrato, lo cual sería efectivo al mes siguiente.

■ El 28 de agosto el señor Camacho Arroyo instó ante la Sala de Humacao del Tribunal Superior una demanda en la que alegaba que su contrato de empleo había sido cancelado sin justa causa y que por ello las economías de su hogar, que dependían enteramente de su salario, habían sido afectadas drásticamente. Reclamaba $5,500 por salarios dejados de percibir y $6,000 por daños y angustias mentales. En su demanda, además, se acogía al procedimiento especial de carácter sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. sec. 3118 *et seq.*).

El Estado Libre Asociado (E.L.A.) contestó la demanda, solicitó su desestimación y/o que se dictara sentencia sumaria. Adujo que el procedimiento sumario establecido en la Ley Núm. 2, *supra*, en la cual se amparaba el señor Camacho Arroyo, no era de aplicación al E.L.A., sus agencias e instrumentalidades y/o funcionarios. Alegó, además, que existía un acuerdo entre las partes que permitía que el patrono diera por terminado el contrato antes de su vencimiento, previa notificación con treinta (30) días de antelación. Argumentó finalmente que la ley que Camacho Arroyo invocaba no proveía para daños y que, de todas ma-

---

cuando ésta afecte los servicios y actividades de EL PATRONO". Apéndice, pág. 9.

neras, las cuantías reclamadas eran excesivas y desproporcionadas.

■ El señor Camacho Arroyo replicó las defensas esbozadas por el Estado y solicitó sentencia sumaria parcial a su favor.([3])

Después de celebrada una vista, mediante resolución, el foro sentenciador resolvió que el procedimiento sumario fijado en la Ley Núm. 2, *supra*, era adecuado para el caso de autos y que la cláusula en la cual Camacho Arroyo reconocía el derecho de su patrono a dar por terminado el contrato con treinta (30) días de anticipación a la fecha de efectividad de la terminación, era nula por ser contraria al interés público. Ordenó entonces al Estado, a la luz de esta determinación, que demostrara que hubo justa causa para dar por terminado el contrato.

El día de la vista, la representación legal del Estado Libre Asociado solicitó la suspensión de la misma, porque no tenía los testigos que demostrarían que existió justificación para la terminación del contrato. El Tribunal denegó la petición, continuó los procedimientos y declaró con lugar la demanda instada por Camacho Arroyo.

En su sentencia, el foro de instancia concluyó que a esta situación de hechos particular le era aplicable el Art. 1476 del Código Civil, 31 L.P.R.A. sec. 4114, que prohíbe el despido de ciertos empleados y trabajadores antes del cumplimiento del contrato, sin justa causa. Una vez llegada a esa conclusión, el tribunal resolvió que como el Estado no sometió prueba de que hubo justa causa para la terminación del contrato, "el despido fue uno injustificado". Finalmente, el tribunal concedió $5,500 en salarios no percibidos, $3,000 por concepto de daños y perjuicios e intereses al

---

([3]) Mediante un escrito posterior, el señor Camacho Arroyo añadió a su posición la Ley Núm. 3 de 24 de febrero de 1988, Leyes de Puerto Rico, pág. 19. Ésta dispone que es nula toda estipulación en un contrato de trabajo por tiempo determinado mediante el cual el empleado autorice a su patrono a despedirle en cualquier momento.

tipo legal computados a partir de la fecha de dictada la sentencia.

De esta sentencia recurre ante nos el Estado Libre Asociado. Aduce, en síntesis, que el tribunal de instancia se equivocó al aplicar al caso de autos el Art. 1476 del Código Civil, *supra*, y al concluir que la Cláusula 11 del contrato, según enmendada, era nula por violar el interés público.

## II

■ Según el Art. 1476 del Código Civil, *supra*:

> Los empleados de labranza, menestrales, artesanos y demás trabajadores asalariados por cierto término o para cierta obra no pueden despedirse ni ser despedidos antes del cumplimiento del contrato, sin justa causa.

De acuerdo con el tribunal de instancia y con la tesis del recurrido Camacho Arroyo, esta disposición es aplicable a la situación de autos y provoca la nulidad de la Cláusula 11 del contrato suscrito entre las partes. No tienen razón. Distinto al criterio del foro sentenciador y al planteamiento de Camacho Arroyo, consideramos que, debido a la naturaleza de las labores dispuestas en dicho artículo, el mismo es inaplicable a Camacho Arroyo. Encontramos fundamento para esta conclusión al interpretar detenidamente el mencionado Art. 1476.

■ Al discutir el ámbito de aplicación del Art. 1586 del Código Civil español, equivalente al citado Art. 1476 de nuestro ordenamiento civil, Scaevola ha manifestado:

> ... como esta sección tan solo se refiere al servicio de criados y trabajadores asalariados, síguese en puridad que para nuestro Código todas las formas de prestación personal en que se diversifica el esfuerzo y la actividad humanas en el intercambio social se reducen a estas dos manifestaciones del trabajo: el que *pro pretio* prestan los criados, sean domésticos o de labranza, y

el que efectúan los trabajadores manuales en cualquiera de sus infinitos oficios, y con aplicación a toda clase de industrias y explotaciones. *Quedan fuera del recinto, o, por lo menos, legislados en dosimetría por el canon general definidor, todas aquellas otras profesiones que llamamos liberales, tituladas o no tituladas, y aquellas prestaciones de ciencia y asistencia que, sin incidir en el servicio de criados, alcanzan en la vida moderna una copiosa floración*; v. gr.: el profesor, el secretario, la señora de compañía, el empleado particular, el taquígrafo, el contable, el mecanógrafo, el delineante, los dependientes de tiendas y almacenes, etc. (Énfasis suplido.) Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1951, T. XXIV, Vol. 2, pág. 22.

■ El ámbito de aplicación del artículo, según Scaevola, es sumamente limitado. Están cubiertos por dicha disposición legal los "criados de labranza, menestrales, artesanos y demás asalariados" *vinculados a una de las ocupaciones enumeradas antes de la aseveración genérica "demás trabajadores asalariados"*. Scaevola parece estar de acuerdo con el principio de interpretación estatutaria de *ejusdem generis* (del mismo género) o la Regla de Lord Tenderson. "Esta doctrina intenta reconciliar la incompatibilidad entre palabras generales y específicas en vista de otras reglas de hermenéutica legal ...". R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. 1, pág. 341. Cuando palabras generales siguen a palabras específicas en una enumeración descriptiva, se interpretarán las palabras generales para que incluyan solamente objetos similares en su naturaleza a los enumerados por las palabras específicas que los preceden. 2A *Sutherland, Statutes and Statutory Construction* Sec. 47.17, págs. 188–200.

■ La solución que propone esta regla para cuando existe en un estatuto un conflicto de esta naturaleza entre palabras específicas y palabras generales se justifica sobre el fundamento de que si la Asamblea Legislativa hubiera querido que la aseveración general se usara en su acepción

más amplia, no hubiera mencionado las palabras particulares. *Sutherland*, supra, pág. 189.

Dicho principio de interpretación estatutaria ha sido utilizado por este Tribunal. Aunque conscientes de que el abuso de la regla "podía constituir una medida peligrosa con la cual medir el alcance estatutario que la legislatura tuvo en mente", en *Puerto Rico Ilustrado v. Buscaglia, Tes.*, 64 D.P.R. 914, 922 (1945), hicimos uso de ella y delineamos los requisitos a cumplirse para que aplicara la misma. Establecimos que la doctrina aplica:

> "... cuando existen las siguientes condiciones: (1) el estatuto contiene una enumeración por palabras específicas; (2) los miembros de la enumeración constituyen una clase; (3) la enumeración no cubre toda la clase; (4) un término general sigue la enumeración; y (5) no se manifiesta claramente la intención que se le da al término general un significado más amplio que el exigido por la doctrina." Véase, además, *Sutherland*, supra, pág. 200.

Definir lo que constituye una "clase" resulta crucial para la determinación de si el principio de interpretación estatutaria de *ejusdem generis* es de aplicación. Según los tratadistas, una clase es una creación conceptual que engloba numerosos elementos con similares características, y el propósito de definirla es establecer, mediante particularizaciones ilustrativas seguidas de una palabra genérica, cuán ampliamente quería el legislador que se interpretara el estatuto. *Sutherland*, supra, pág. 200.

Una vez expuesta la doctrina de *ejusdem generis*, sus propósitos y los requisitos para su aplicación, y delineada la definición de lo que es una clase, procede que analicemos si la misma es utilizable para derrotar la teoría del Sr. Héctor Camacho Arroyo.

## III

Aduce Camacho Arroyo que el término "demás asalariados" contenido en el Art. 1476 del Código Civil, *supra*, in-

cluye el trabajo por él realizado en el Cuerpo de Voluntarios. Dicha tesis fue acogida por el ilustrado foro sentenciador a pesar de que el término o frase "demás asalariados" está precedido por una enumeración no exhaustiva de trabajos manuales. No tiene razón.

Claramente este principio del mismo género es aplicable al artículo que invoca Camacho Arroyo para sustentar su posición. El Art. 1476 del Código Civil, *supra*, contiene una enumeración de palabras específicas, a saber: "los empleados de labranza, menestrales y artesanos" que constituyen una clase de trabajadores; los obreros manuales. Esta lista no incluye a todos los posibles trabajadores manuales, pero contiene al final una frase genérica en virtud de la cual podría incluirse a otras personas que realizan esta clase de labor. Así enumerada, la disposición provee cabida para una infinidad de labores que requieren destrezas manuales. Finalmente, en esta disposición no se manifiesta claramente la intención de que al término general se le dé otro significado.

A la luz de la enumeración hecha por el legislador en dicha disposición, es difícil llegar a la conclusión de que quiso incluir el tipo de trabajo eminentemente gerencial realizado por Camacho Arroyo. Coordinar programas para jóvenes residentes en los sistemas de vivienda pública del país no guarda siquiera una relación remota con el tipo de trabajo que lleva a cabo un artesano o un empleado de labranza.

En conclusión, y para fines del principio de interpretación estatutaria descrito anteriormente, el trabajo hecho por Camacho Arroyo no está previsto por la disposición de nuestro ordenamiento civil que regula el despido de los "empleados de labranza, menestrales, artesanos y demás trabajadores asalariados por cierto término y para cierta obra", o sea, el citado Art. 1476 del Código Civil.

Encontramos fundamento adicional para sustentar esta conclusión en la Ley Núm. 3 de 24 de febrero de 1988,

Leyes de Puerto Rico, pág. 21, mediante la cual la Asamblea Legislativa declaró la nulidad de

> ... toda estipulación en un contrato de trabajo por tiempo determinado o para llevar a cabo cierta obra, mediante la cual el obrero o empleado autorice al patrono a despedirle en cualquier momento antes del cumplimiento del contrato, sin causa justificada ....

█ A pesar de ser la misma inaplicable al caso de autos, su exposición de motivos arroja luz sobre la poca efectividad que el propio legislador ha reconocido que tiene el mencionado Art. 1476 del Código Civil. Manifestó el legislador:

> Al ser derogada la Ley Núm. 17 de 5 de abril de 1937, se dejó sin efecto aquella parte de la misma donde se disponía la nulidad de toda estipulación mediante la cual el empleado autoriza al patrono a despedirle en cualquier momento, sin justa causa, renunciando a cualquier derecho, beneficio o compensación adicional que pudiera corresponderle de acuerdo a las leyes de Puerto Rico por razón de tal cesantía. Esto ha traído como consecuencia el que se hayan quedado huérfanos de protección aquellos obreros contratados por tiempo determinado, cubiertos por el Artículo 1476 del Código Civil el cual dispone que "... los empleados de labranza ...". (Escolio omitido.) Leyes de Puerto Rico, *supra*, pág. 20.

"[A]nte la posibilidad de que se pudiera argumentar y razonablemente interpretarse, que el derecho de los empleados contratados por un tiempo fijo es renunciable a la luz de lo establecido en el Artículo 4 del Código Civil", el legislador consideró que debía crearse legislación especial que le diera vitalidad y mayor amplitud a lo regulado en el citado Art. 1476. Leyes de Puerto Rico, *supra*, pág. 20.

Después de esta clara manifestación legislativa, es perfectamente plausible una interpretación de que antes de la aprobación de la Ley Núm. 3, *supra*, el derecho concedido por el Art. 1476 del Código Civil, *supra*, es renunciable. Sin embargo, debido a la inaplicabilidad del mismo a este caso

por tratarse de un empleo gerencial no es necesario que pasemos juicio sobre si Camacho Arroyo renunció a no ser despedido sin justa causa cuando firmó el mencionado contrato.

## V

 Una vez establecida la inaplicabilidad del Art. 1476 del Código Civil, *supra*, réstanos acudir al texto de la cláusula del contrato y atender la intención de los contratantes. Precisa que recordemos al emprender esta tarea que en Puerto Rico rige el principio de libertad de contratación y, como parte de este principio, las partes contratantes "pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Véase *Unisys v. Ramallo Brothers*, 128 D.P.R. 842 (1991).

 La Cláusula 11 del "Contrato de empleo", según enmendada, entre el Cuerpo de Voluntarios y el señor Héctor Camacho Arroyo disponía que tanto el empleado como el patrono tendrían derecho a dar por terminado el contrato antes de su vencimiento mediando una notificación de treinta (30) días antes de la terminación.

Contrario a la opinión de la ilustrada sala sentenciadora, no consideramos que esta cláusula contractual sea contraria al interés público.

 El mecanismo de contratación de servicios profesionales y consultivos es ampliamente usado por las agencias administrativas y entes gubernamentales del país. Está reglamentado por diversas directrices agenciales que establecen las limitaciones a este tipo de prestación de servicios y que fijan un contenido uniforme mínimo en el contrato a otorgarse.

Constituye una forma útil de satisfacer una necesidad

temporera o accidental que surja en la agencia o dependencia estatal, o que constituya una tarea especial muy precisa o determinada en cuanto a contenido y duración. Se hace mediante la otorgación de un contrato formal en el que comparecen las partes y en el cual se enumeran claramente las obligaciones específicas que se contraen. En ocasiones dichos contratos de servicios profesionales y consultivos se otorgan con cargo a asignaciones presupuestarias que están limitadas a un año en específico. Cuando la situación es ésta, el Gobierno limita la duración del contrato a la disponibilidad de dichos fondos e incluye en una cláusula resolutoria que la vigencia de dicho contrato está subordinada a que se asignen los fondos necesarios bajo la partida de Servicios Profesionales y Consultivos.

 La existencia de este tipo de cláusula y de cláusulas análogas entre el Estado y las personas o entidades en las que ambas partes se reservan el derecho a declarar resuelto el contrato mediante el que brindan servicios profesionales, es enteramente justificable. Dichos acuerdos, lejos de ser contrarios al interés público, le brindan al Estado la flexibilidad que le permite terminar sus relaciones contractuales cuando no cuenta con el presupuesto necesario o cuando, por ser temporero o accidental el servicio profesional, el mismo se torne innecesario. Si bien es cierto que el Estado podría tener otras doctrinas contractuales a su disposición para desvincularse lícitamente de la persona con quien contrató servicios profesionales, no existe impedimento legal alguno para pactar la resolución bilateral expresa siempre que medie una notificación adecuada. Distinto al foro de instancia, consideramos que este tipo de cláusula no es nocivo al orden público y que, por el contrario, a la luz del Art. 1207 del Código Civil, *supra*, lo que en efecto sería detrimental al interés público es negarle al Estado la flexibilidad que le garantiza esta cláusula resolutoria expresa.

■ Al evaluar la jurisprudencia en la que hemos interpretado el mencionado Art. 1207 del Código Civil, somos conscientes de que darle contenido a la expresión "orden público" no es tarea fácil. En *Hernández v. Méndez & Assoc. Dev. Corp.*, 105 D.P.R. 149 (1976), delineamos el contenido de la misma:

> "Orden público" es el conjunto de valores eminentes que guían la existencia y bienestar de una sociedad. El concepto orden público recoge y ampara un interés social dominante por su trascendencia, por el número de personas que afecta y por la valía de los derechos que tiende a proteger. ... En gran medida el orden público es el acopio de normas de moral y de ética pública que en ocasiones alcanzan su exposición en ley, pero que aún sin esa expresa declaración legislativa, constituyen principios rectores de sabio gobierno nacidos de la civilización y fortalecidos por la cultura, la costumbre, por la manera de ser, en fin por el estilo de una sociedad. Véase, además, *Unisys v. Ramallo Brothers*, supra.

A la luz de esta amplia definición de lo que constituye "orden público", la conclusión de que la Cláusula 11 del contrato entre el Cuerpo de Voluntarios y el señor Camacho Arroyo no violenta el orden público, es inescapable.

■ Además, este Tribunal en *Flores v. Municipio de Caguas*, 114 D.P.R. 521 (1983), al interpretar el Art. 1208 del Código Civil, 31 L.P.R.A. sec. 3373,[4] validó una cláusula resolutoria unilateral que permitía que una de las partes terminara el contrato "at its pleasure", y que de antemano establecía que el ejercicio de la misma no constituía un incumplimiento de contrato.

■ Acudiendo al derecho comparado y a la distinción que existe entre la duración de un contrato y su validez, resolvimos allí que aunque nuestro Código Civil carece de un articulado que regule la resolución unilateral expresa,

---

[4] Este artículo dispone: "La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes." 31 L.P.R.A. sec. 3373.

las partes pueden pactar para incluir en sus contratos una cláusula que le "confier[e] a una sola de ellas la facultad de poner fin a la relación contractual sin exigir para ello otro requisito que la mera voluntad de la parte de así hacerlo". *Flores v. Municipio de Caguas*, supra, pág. 529.

 Igual razonamiento es de aplicación a este caso, particularmente por el hecho de que ambas partes contratantes estaban facultadas contractualmente para declarar resuelto el contrato. La cláusula era, en consecuencia, perfectamente válida y legal. Al notificarle a Camacho Arroyo, con treinta (30) días de anticipación, que el contrato existente sería resuelto, el Cuerpo de Voluntarios no incurrió en un despido injustificado. La entidad activó la facultad resolutoria que ella y Camacho Arroyo se habían concedido mutuamente en el contrato de empleo.

Por los fundamentos expuestos, *se revocará la sentencia recurrida.*

Los Jueces Asociados Señores Negrón García y Fuster Berlingeri concurrieron sin opinión escrita.