CARLOS MATTEI NAZARIO, NELLIE CEDÓ y la SOCIEDAD DE GANANCIALES compuesta por ambos, demandantes y apelantes, *v.* MIGUEL P. VÉLEZ & ASOCIADOS, demandados y apelados.

*Número:* AC-95-34          *Resuelto:* 7 de mayo de 1998

510

*Víctor M. Rivera Torres,* de *Rivera Colón, Rivera Torres & Ríos Berly,* abogado de la parte apelante; *Mario A. Prieto Batista,* abogado de la parte apelada.

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

El recurso de apelación ante nos cuestiona la sentencia del Tribunal de Circuito de Apelaciones que revocó sumariamente el dictamen del tribunal de instancia, en el cual —a tenor del Art. 1476 del Código Civil, 31 L.P.R.A. sec. 4114— se concluyó que el Sr. Carlos Mattei Nazario había sido despedido de forma injustificada. El foro de instancia condenó sumariamente a la sociedad Miguel P. Vélez & Asoc. al pago de nueve mil ochocientos sesenta dólares ($9,860) por los salarios dejados de devengar, con intereses al 8.25%, costas y mil dólares ($1,000) en honorarios de abogado. Por su parte, el foro apelativo entendió que existía controversia sobre hechos esenciales, la cual impedía la adjudicación del caso por la vía sumaria. Estimamos que no existe tal controversia de hechos esenciales que impida resolver el caso por la vía sumaria. Además, resolvemos que el remedio que el apelante Mattei Nazario tiene a su disposición en el caso de autos es una acción por incumplimiento contractual y que, en la situación particular ante nos, tal incumplimiento no se configuró. Por ende, revocamos y desestimamos la acción.

# I

En 1992 Miguel P. Vélez y Asociados (en adelante Vélez & Asoc.), firma de consultoría en ingeniería e inspección que se desempeña dentro de la industria de la construcción, contrató los servicios de Carlos Mattei Nazario para la inspección de obras de construcción. El contrato otorgado entre las partes estipuló lo siguiente:

NOTIFICACIÓN DE NOMBRAMIENTO

Nombre: <u>Carlos Mattei Nazario</u>

Seguro Social: <u>580–50–1340</u>

Posición: <u>Inspector</u>

Clasificàción: _____

Este nombramiento será efectivo el <u>10</u> de <u>AGOSTO</u> de <u>1992</u> hasta el <u>1</u> de <u>ABRIL</u> de <u>1994</u>. El empleado cuyo nombre aparece en este documento estará en un periodo probatorio de 90 días a partir de la fecha de efectividad. Una vez aprobado el periodo probatorio, su nombramiento se extenderá hasta la fecha de terminación establecido [sic] en el presente documento.

La vigencia de este nombramiento posterior a la aprobación del periodo probatorio, estará sujeto [sic] al cumplimiento de las normas administrativas de Miguel P. Vélez & Associates, cuyo documento usted recibió al momento de aceptar el presente nombramiento.

Usted recibirá un salario de <u>$8.00</u> por hora. Miguel P. Vélez & Associates es una empresa relacionada a la industria de la construcción, por lo cual a sus empleados le son de aplicabilidad los decretos mandatorios y vigentes o que en el futuro promulgue la Junta de Salario Mínimo de Puerto Rico, respecto a esta industria.

Fdo. <u>(representantes de Vélez & Asoc.)</u>
APROBADO

ACEPTADO
Fdo. <u>(Carlos Mattei Nazario)</u>
Firma del Empleado

Anejo, Anejo 1, Apéndice de la apelación, pág. 51.

El contrato de servicios no especificaba la obra a la cual

Mattei Nazario estaría asignado para su inspección. A tenor de éste, la vigencia del nombramiento estaría sujeta al cumplimiento de las normas administrativas de dicha firma, según plasmadas en el reglamento de personal de la empresa, el cual fue entregado al empleado en el momento de la firma del contrato. Dicho reglamento disponía entre las razones que constituirían justa causa para cesantear a un empleado:

A. Cierre total, temporero o parcial de las operaciones del establecimiento durante la vigencia del nombramiento del empleado.

B. Reducciones en el empleo por motivo de reorganización de la empresa o razones económicas.

C. Reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de servicios prestados que prevalecen al momento de la cesantía. Anejo II, Apéndice de la Apelación, pág. 54.

Desde que comenzó a trabajar para Vélez & Asoc., Mattei Nazario se desempeñó como inspector de la construcción del puente Teodoro Moscoso sobre la laguna San José en Isla Verde.

El 17 de septiembre de 1993 Mattei Nazario fue despedido de su empleo, faltando aún veintiocho (28) semanas para el vencimiento del contrato de servicios. La razón para el despido —que había sido aducida por el patrono en una comunicación notificada al empleado una semana antes de su efectividad— fue la necesidad de reducir el personal debido a que las labores en el puente Teodoro Moscoso se encontraban en su fase final. Véase el Memorando de 15 de septiembre de 1993, Apéndice de la apelación, pág. 55. El patrono llegó a dicha determinación a base de una inspección ocular del adelanto de la obra.

Luego de ello, Mattei Nazario, su esposa Nellie Cedó y la sociedad legal de gananciales constituida por ambos presentaron una querella contra Vélez & Asoc. ante el entonces Tribunal de Distrito, Sala de San Juan, al amparo del procedimiento especial de carácter sumario que establece

la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. sec. 3118 *et seq.*). Apoyados en el Art. 1476 del Código Civil, *supra*, y en lo resuelto en *Cassasús v. Escambrón Beach Hotel*, 86 D.P.R. 375 (1962), reclamaron las sumas de nueve mil ochocientos sesenta dólares ($9,860) por los salarios dejados de devengar y veinte mil dólares ($20,000) en resarcimiento de los perjuicios causados a raíz del incumplimiento del contrato de empleo.

Vélez & Asoc. compareció oportunamente y alegó como defensa la existencia de justa causa para el despido, según dispuesta por la Ley sobre Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a *et seq.*). Adujo que la reducción en el volumen de trabajo constituyó la razón del despido.

Luego de una serie de trámites procesales y de encausar la reclamación en un procedimiento ordinario, el tribunal de instancia resolvió a favor de Mattei Nazario. Dicho foro concluyó que no existía controversia en torno a que el contrato de trabajo entre Mattei Nazario y Vélez & Asoc. disponía un período fijo de duración; que Mattei Nazario fue despedido antes de vencer dicho período, y que Vélez & Asoc. retuvo a dos (2) inspectores también contratados por un término fijo y de menor antigüedad que el querellante. En vista de ello, emitió una sentencia de forma sumaria en la cual concluyó que no había mediado justa causa para el despido, conforme a lo requerido en el Art. 1476 del Código Civil, *supra*, pues el patrono no despidió a Mattei Nazario siguiendo un orden de antigüedad. En este sentido, el foro de instancia aplicó a su interpretación del citado Art. 1476 la definición de justa causa para el despido que contiene la Ley Núm. 80, *supra*, y consideró, como aplicable a Vélez & Asoc., la disposición de dicha ley que obliga a los patronos a considerar el criterio de antigüedad al despedir a un empleado cuando la razón para el despido es la reducción en el nivel de los servicios prestados. 29 L.P.R.A. sec. 185c.

Finalmente, condenó a la firma querellada al pago de nueve mil ochocientos sesenta dólares ($9,860) en concepto de salarios dejados de devengar, más los intereses al 8.25%, mil dólares ($1,000) en concepto de honorarios de abogado, más las costas del litigio.

Ambas partes solicitaron la reconsideración de dicho dictamen. El tribunal consideró tardía la alegación traída en reconsideración por Vélez & Asoc., con respecto a que ésta utilizó el criterio de capacidad para retener en el empleo a otros empleados de menos antigüedad que Mattei Nazario. En cuanto a la insistencia de los querellantes en reclamar una indemnización por los daños y perjuicios sufridos, el foro a quo sostuvo su determinación de no concederlos por entender que el patrimonio de los querellantes no había sufrido consecuencias desfavorables al no disponer oportunamente del dinero al cual tenían derecho.

Oportunamente, la firma Vélez & Asoc. presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones. En esencia planteó ante dicho foro que el tribunal de instancia había incidido al emitir la sentencia sumaria, en vista de que existía una controversia genuina con respecto a la existencia de justa causa para el despido de Mattei Nazario.

Al evaluar el recurso, el foro apelativo concluyó que las normas que provee la Ley Núm. 80, *supra*, para las instancias en que se reduce personal en una empresa no aplican al caso de autos, por tener el contrato un tiempo determinado, y que sólo podría hacerse referencia a dicha ley en cuanto a su definición de justa causa. Además, por entender que existía una controversia material sobre algunos hechos esenciales que ameritaban ser ventilados en sus méritos dentro de un juicio plenario,[1] el Tribunal de Cir-

---

[1] En particular, entendió que debían examinarse las circunstancias que dieron pie al despido para determinar si existía justa causa para éste, y que no estaban claros los términos del contrato.

cuito de Apelaciones revocó la sentencia apelada y devolvió el caso para la continuación de los procedimientos.

Inconforme, Mattei Nazario acudió ante nos mediante un recurso de apelación, amparándose en el Art. 3.002(f) de la Ley de la Judicatura de Puerto Rico de 1994, entonces vigente, 1994 (Parte 3) Leyes de Puerto Rico 2807.(²) Nos señala que la sentencia sumaria emitida por el tribunal de instancia se fundamenta en hechos admitidos por la parte querellada, por lo que entiende que no existe una controversia material sobre hechos esenciales. Plantea, además, que el tribunal apelativo erró al considerar que la norma sobre antigüedad, dispuesta en la Ley Núm. 80, *supra,* no aplicaba a los casos instados al amparo del Art. 1476 del Código Civil, *supra,* por despido injustificado de un empleado contratado por tiempo determinado.

Examinados los alegatos de las partes así como los documentos que obran en autos y el derecho aplicable, estamos en posición de resolver.

## II

Antes de considerar el planteamiento en torno a si existe una controversia sobre hechos esenciales que impida la adjudicación del caso de forma sumaria, consideramos apropiado examinar la naturaleza del remedio al que Mattei Nazario tiene derecho a la luz de la relación contractual que existía entre las partes.

A. Como es sabido, en Puerto Rico rige el principio de la libertad de contratación, según el cual las partes contratantes pueden establecer los pactos, las cláusulas y las

---

(²) Dicho inciso disponía lo siguiente en cuanto a los recursos que podían ser presentados ante nos:

"Mediante recurso de apelación, revisará las sentencias del Tribunal de Circuito de Apelaciones revocando una sentencia o resolución del Tribunal de Primera Instancia." 1994 (Parte 3) Leyes de Puerto Rico 2807.

condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral ni al orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372.

En el ámbito de las obligaciones y los contratos, es una doctrina fundamental que, cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471. Sabido es, también, que a partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven de éste conforme a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375.

En el contrato de arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra o a prestar a la otra un servicio a cambio de un precio cierto. Art. 1434 del Código Civil, 31 L.P.R.A. sec. 4013. Habrá un contrato de arrendamiento de servicio siempre que consensualmente con la prestación personal coexista el precio cierto. *Morales v. Álvarez*, 63 D.P.R. 208 (1944); L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1982, Vol. II, pág. 462. Este contrato se caracteriza por ser consensual, pues se perfecciona con el mero consentimiento; bilateral, al coexistir obligaciones recíprocas, y a título oneroso, dada la intervención de un precio. Díez-Picazo y Gullón, *op. cit.*

Los contratos de servicios, también conocidos como contratos de trabajo, pueden pactarse por un tiempo indeterminado o indefinido, o por un período fijo de duración. Esto último puede hacerse de dos (2) maneras: con una fecha específica de vencimiento o por el tiempo que tome la realización de determinada obra.

En nuestra jurisdicción, los contratos de servicio están regulados por las leyes que protegen los derechos de los

trabajadores. Entre éstos se encuentran el derecho a un salario mínimo, horas extras, paga por el trabajo realizado, vacaciones y otros. Estos derechos son irrenunciables y operan automáticamente, sin que dependan de la voluntad del trabajador para hacerlos valer. R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, Ed. Ramallo, 1989, pág. 3. En particular, según se desprende de varios estatutos,[3] es política pública del Estado desalentar los despidos injustificados.

■ El Art. 1476 del Código Civil, *supra*, aplicado al caso de marras por los tribunales de instancia y apelativo, establece que "[l]os empleados de labranza, menestrales, artesanos y demás trabajadores asalariados por cierto término o para cierta obra no pueden despedirse ni ser despedidos antes del cumplimiento del contrato, sin justa causa". En *Camacho Arroyo v. E.L.A.*, 131 D.P.R. 718 (1992), tuvimos la oportunidad de interpretar el alcance de dicho articulado.

Allí nos confrontamos con la situación de un empleado gerencial, cuyo contrato de empleo disponía su resolución por cualquiera de las partes, siempre y cuando mediara una notificación a tales efectos con treinta (30) días de anticipación. En cuanto a la aplicación del citado Art. 1476, expresamos:

> A la luz de la enumeración hecha por el legislador en dicha disposición, es difícil llegar a la conclusión de que quiso incluir el tipo de trabajo eminentemente gerencial realizado por Camacho Arroyo. Coordinar programas para jóvenes residentes en los sistemas de vivienda pública del país no guarda siquiera una relación remota con el tipo de trabajo que lleva a cabo un artesano o un empleado de la labranza. *Camacho Arroyo v. E.L.A.*, supra, pág. 729.

---

[3] Véanse: Arts. 1474 y 1476 del Código Civil, 31 L.P.R.A. secs. 4112 y 4114; Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. 185 *et seq.*

A base del principio de interpretación estatutaria de *ejusdem generis* (del mismo género), determinamos que éste aplica únicamente a aquellas labores que requieran destrezas manuales.

En el caso de marras, Mattei Nazario fue contratado como inspector de obras de construcción. El contrato sólo usa el calificativo de "inspector", sin asignarle ninguna clasificación ocupacional adicional. Aunque su contrato de servicio no contiene una descripción específica de las tareas que conlleva dicho puesto, tomamos conocimiento judicial con respecto a que —de ordinario— un inspector de obras no lleva a cabo labores manuales, sino que se dedica a supervisar las labores manuales que otros realizan. En este caso, supervisa los trabajos realizados por los obreros de la construcción.

Las labores para las cuales fue contratado Mattei Nazario no conllevan el uso de destrezas manuales y, por ende, no puede invocar el Art. 1476 del Código Civil, *supra*, ante su despido. Tanto el Tribunal de Circuito de Apelaciones como el tribunal de instancia partieron de la premisa de que a la situación ante nos le aplicaba dicho articulado. Incidieron ambos foros al decidir de ese modo, sin seguir nuestros pronunciamientos en *Camacho Arroyo v. E.L.A.*, supra.

▇ Tampoco aplica al caso de marras la Ley sobre Despido Injustificado, Ley Núm. 80, *supra*, la cual concede un remedio económico a los empleados despedidos injustificadamente de sus empleos. Dicha ley cobija únicamente a los empleados contratados en la empresa privada por un tiempo indeterminado. En el caso de autos, el contrato de servicio entre las partes, como antes se expresó, fue por un tiempo determinado.

▇ Destacamos, sin embargo, que en atención al principio de libertad de contratación y a la política pública plasmada en la Ley Núm. 3 de 24 de febrero de 1988 (29 L.P.R.A. sec. 185i n.), un patrono podría incorporar válida-

mente en un contrato de esta naturaleza las causales para cesantear o despedir que sean apropiadas y pertinentes al buen y normal funcionamiento de su empresa. Estas causales, sin embargo, no deben estar reñidas con nuestro ordenamiento jurídico.([4]) En este contexto, la Ley Núm. 80, *supra*, constituye un marco de referencia para evaluar la razonabilidad de las causales de justa causa para el despido que las partes privadas incorporen en sus contratos de servicio por tiempo determinado.

---

([4]) En el contexto de los empleados de la empresa privada contratados sin un tiempo determinado, en nuestro ordenamiento no existe una prohibición absoluta de despido de un empleado, pues la justa causa permite el despido sin que el patrono incurra en responsabilidad legal alguna.

Anteriormente, en controversias relativas a contratos de trabajo no cubiertas por la Ley Núm. 80, *supra*, hemos acudido a la enumeración que ofrece dicha ley en su Art. 2, sobre las causales constitutivas de justa causa para el despido de un empleado; en lo pertinente dispone:

"(a) Que el obrero siga un patrón de conducta impropia o desordenada.

"(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

"(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas [sic] para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

"(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

"(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja en el estacionamiento y los cambios en los servicios rendidos al público.

"(f) Reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

"No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del estacionamiento." 29 L.P.R.A. sec. 185b.

Los transcritos incisos (d), (e) y (f) recogen las causales aceptadas por nuestro ordenamiento como justas y que son imputables al patrono. En casos al amparo de la Ley Núm. 80, *supra*, cuando el patrono alega haber despedido a un empleado por alguna de estas razones, aplica la norma sobre el orden de antigüedad establecida en el Art. 3 de la misma ley, 29 L.P.R.A. sec. 185c. A tenor de esta norma es necesario que, al despedir empleados, el patrono siga el orden de antigüedad de éstos en su empresa, entre aquellos en las clasificaciones ocupacionales que sean objeto de la reducción de personal. Véase R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, Ed. Ramallo, 1989, pág. 121.

## III

En ausencia de un remedio de carácter especial para este tipo de situación, es menester acudir a la doctrina general de los contratos. Lo hacemos conscientes de la política pública y del propósito del Estado de proteger al trabajador en la tenencia de su empleo, desalentando los despidos injustificados y caprichosos.([5])

Como es sabido, cuando el incumplimiento de una obligación contractual produjere daños a una de las partes contratantes, procede una acción de daños y perjuicios por incumplimiento contractual. El Código Civil de Puerto Rico distingue entre los daños derivados del incumplimiento de un contrato, Art. 1054 (31 L.P.R.A. sec. 3018), y los derivados del incumplimiento de unas obligaciones y deberes impuestos por la naturaleza y por la ley, que son necesarios para la connivencia social, Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

Las acciones *ex contractu* se basan en el quebrantamiento de un deber que surge de un contrato expreso o implícito y tienen por objeto que se cumplan las promesas sobre las cuales las partes otorgaron su consentimiento. *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 D.P.R. 712 (1992); *Ocasio Juarbe v. Eastern Airlines, Inc.*, 125 D.P.R. 410, 419 (1990); *Santiago Nieves v. A.C.A.A.*, 119 D.P.R. 711, 716 (1987); *Mejías v. López*, 51 D.P.R. 21, 26 (1937). Si

---

([5]) En 1988 la Asamblea Legislativa estableció que el derecho a no ser despedido sin justa causa es de carácter irrenunciable también para los empleados contratados por término fijo para cierta obra. Ley Núm. 3 de 24 de febrero de 1988. Ella establece, en su Sec. 1:

"Por la presente se declara nula toda estipulación en un contrato de trabajo por tiempo determinado o para llevar a cabo cierta obra, mediante la cual el obrero o empleado autorice al patrono a despedirle en cualquier momento antes del vencimiento del contrato, sin causa justificada o que dicho obrero o empleado conviene en renunciar a cualquier derecho, beneficio o compensación adicional que pueda corresponderle de acuerdo con las leyes de Puerto Rico por razón de tal cesantía."

No estableció, sin embargo, el remedio que tendría el empleado, así contratado, cuando es despedido injustificadamente antes de cumplirse el término o de finalizada la obra. No se trata en este caso de una cláusula contractual de esta naturaleza, por lo que esta disposición de ley resulta inaplicable.

el daño surge exclusivamente como consecuencia del incumplimiento contractual, la acción de daños *ex contractu* sería el único remedio disponible.

Por ende, para que proceda esta acción tiene que haber existido un acuerdo de voluntades que genere una obligación, situación o un estado de derecho producto de un convenio, que haya creado unas expectativas a base de las cuales actuaron las partes. De ordinario, cada parte confía en que la otra parte cumplirá con lo libremente pactado, conforme al principio de la obligatoriedad de los contratos y a la buena fe. Una acción u omisión voluntaria, por la cual resulte incumplida una obligación anteriormente constituida, da origen a la acción de daños contractuales.

■ Cuando se trate de contratos de servicios por tiempo determinado, dejar de prestar servicios al principal, por una parte, o dejar cesante al empleado, por otra, podría constituir una infracción al contrato existente si tales actuaciones se desvían de lo acordado. En tal caso, quien sufra daños por motivo del quebrantamiento contractual tendrá a su favor una acción para recobrar por los daños y perjuicios que le hayan sido causados.

En cuanto al cómputo de la indemnización que ha de ser concedida, el Art. 1059 del Código Civil dispone lo siguiente:

> La indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor, salvas las disposiciones contenidas en las secciones siguientes. 31 L.P.R.A. sec. 3023.

Sin embargo, el Art. 1060 del Código Civil limita la responsabilidad del deudor de buena fe a los "daños y perjuicios ... previstos o que se hayan podido prever al tiempo de

constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento". 31 L.P.R.A. sec. 3024.

En cuanto a la compensación que debe ser concedida en este tipo de casos, hemos resuelto que constituye prima facie el sueldo dejado de devengar durante el tiempo en que hubiera estado vigente el contrato. *Schneider v. Tropical Gas Company, Inc.*, 95 D.P.R. 626, 630–632 (1967); *Villar & Co., Inc. v. Conde*, 37 D.P.R. 706 (1928); *Hardouin v. Krajewski-Pesant Co.*, 22 D.P.R. 689, 702 (1915). Anteriormente hemos considerado que cuando una persona contratada por un tiempo determinado es despedida de su empleo, tiene derecho, nominalmente y prima facie, a recibir una remuneración por todo el período que abarca el contrato. *Villar & Co., Inc. v. Conde*, supra, pág. 713. Véase, también, *García Fernández, Ex parte*, 44 D.P.R. 296, 305–306 (1932). En dichos casos expresamos que el peso de la prueba para disminuir dicha cuantía recae sobre la persona que despide al empleado.

Con relación a las angustias y los daños mentales, reiteradamente hemos resuelto que, de ordinario, cuando se trata de un incumplimiento contractual, no proceden a no ser que hubieran podido preverse al tiempo de constituirse la obligación y fueran consecuencia necesaria de la falta de cumplimiento del contrato. Art.1960 del Código Civil, *supra; Camacho v. Iglesia Católica*, 72 D.P.R. 353, 363 (1951); *Díaz v. Palmer*, 62 D.P.R. 111 (1943); *Díaz v. Cancel*, 61 D.P.R. 888 (1943); *González Mena v. Dannermiller Coffee Co.*, 48 D.P.R. 608, 617 (1935).

Examinada la doctrina pertinente en materia de contratos, resulta forzoso concluir que el remedio que tendría a su disposición un empleado —que sea contratado por un tiempo determinado, o para la realización de cierta obra, según las mismas circunstancias del apelante Mattei Nazario, cuando es despedido de su empleo antes del venci-

miento del contrato y en violación a sus términos— sería la acción de daños por incumplimiento contractual.(⁶)

Aclarado lo anterior, evaluemos, por lo tanto, si existe una genuina controversia de hechos que impida la adjudicación del caso en esta etapa de los procedimientos y si, de no ser tal la situación, en efecto tal quebrantamiento contractual quedó configurado.

## IV

Un examen del expediente del caso revela que los hechos esenciales siguientes no están en controversia. *Primero*, Mattei Nazario suscribió un contrato de servicios con Vélez & Asoc. por un término determinado de aproximadamente veinte (20) meses. *Segundo*, ese contrato de servicio incorporaba por referencia las normas administrativas de la compañía, las cuales le fueron entregadas al apelante al momento de su contratación.(⁷) Véase *Selosse v. Fund.*

---

(⁶) En aquellos casos cuando sus labores pudiesen clasificarse como manuales, recordemos que tiene disponible la acción derivada del Art. 1476 del Código Civil, *supra*, también de daños, y cuando se trate de servicios domésticos, la indemnización limitada a quince (15) días de salario que reconoce el Art. 1474, *supra*.

(⁷) En su parte "IV", el aludido reglamento enumera que las actuaciones siguientes constituirán justa causa para el despido:

"A. Abandono de las labores sin autorización de su supervisor inmediato, cuando haya incurrido en esta práctica en dos ocasiones anteriores y haya sido amonestado por escrito por tal conducta.

"B. Ausentismo a sus labores por más de tres días consecutivos sin previa notificación. Si al cuarto día compareciera al trabajo, tendrá que proveer un certificado médico expedido por un facultativo autorizado a ejercer la medicina en Puerto Rico, que justifique las razones que obligaron al trabajador a no asistir a su empleo. De no proveer el certificado aquí establecido y negarse a justificar las ausencias, el patrono a su discreción podrá despedirlo.

"C. La actitud del empleado de no rendir trabajo en forma eficiente o de hacerlo en forma negligente, y que por tal razón haya sido amonestado por escrito en dos ocasiones previas.

"D. Conducta desordenada que vaya con descrédito del nombre del patrono y que afecten la ejecución de los trabajos que realiza la empresa, tales como:

"1. riña, peleas y discusiones en el lugar de trabajo.

"2. expresiones deshonestas, vituperios, manifestación de palabras obscenas, exposiciones deshonestas.

"3. agresiones y/o la comisión de cualquier acto que constituyen delito conforme al Código Penal de Puerto Rico.

*Educ. Ana G. Méndez*, 122 D.P.R. 534 (1988). Así, como único podría despedirse al empleado antes del vencimiento de su contrato sería si se configuraba alguna de las causas reconocidas en el reglamento de personal para cesantear o despedir empleados. *Tercero*, desde que fue contratado, Mattei Nazario laboró como inspector de construcción en el puente Teodoro Moscoso. *Cuarto*, Mattei Nazario fue despedido antes de que venciera el término de duración del contrato de servicios. *Quinto*, la razón aducida para ello por la compañía antes de que el despido fuera efectivo, fue la necesidad de reducir el personal de la compañía debido a que las labores en el puente Teodoro Moscoso se encontraban en su fase final.

Este último aspecto no fue controvertido por ninguna de las partes a lo largo del proceso. De hecho, el propio Mattei Nazario, al plantear que no se siguió un orden de antigüedad al despedir como fundamento de su alegación de despido injustificado, según el Art. 1476 del Código Civil, *supra*, da por cierto en su recurso el hecho de que su cesantía fue motivada por el adelanto de la obra. Véase el Escrito de Apelación, pág. 7. Así, aduce que es un hecho no controvertido que el patrono no siguió el orden de antigüedad al despedir, porque lo aceptó y expresamente afirmó que la razón para el despido lo fue la inspección ocular del adelanto de la obra.

---

"4.   uso de bebidas embriagantes durante la jornada de trabajo y/o presentarse al trabajo en estado de embriaguez. Apéndice de la apelación, págs. 53–54.

En su parte "V" dispone, además, entre las razones que constituirían justa causa para cesantear a un empleado:

"A.   Cierre total, temporero o parcial de las operaciones del establecimiento durante la vigencia del nombramiento del empleado.

"B.   Reducciones en el empleo por motivo de reorganización de la empresa o razones económicas.

"C.   Reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de servicios prestados que prevalecen al momento de la cesantía." Apéndice de la apelación, pág. 54.

Puede observarse que las razones esbozadas en los incisos (c) y (d) coinciden con los incisos (b) y (a) del Art. 2 de la Ley Núm. 80, *supra*. El inciso (b) del Art. 2, *supra*, también está expresamente incorporado en dicho reglamento de personal al éste establecer que las violaciones a dichas normas constituirán justa causa. En la parte "V" están incluidos los incisos (d) y (f) del Art. 2, *supra*.

Asimismo, surge del expediente que el puente Teodoro Moscoso fue abierto al público antes de que terminara la vigencia del período por el cual Mattei Nazario fue contratado inicialmente, lo que es claramente indicativo de que al momento de la cesantía de Mattei Nazario la obra estaba considerablemente adelantada. Por ello, además, podría concluirse razonablemente que hubo una reducción en el volumen de los servicios prestados por Vélez & Asoc. Debemos destacar, también, que fue el propio querellante quien promovió la moción de sentencia sumaria en instancia, para aducir que los hechos esenciales no estaban en controversia y quien ante nos formula igual planteamiento como fundamento para revocar al Tribunal de Circuito de Apelaciones.

Como se sabe, la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, permite que cualquiera de las partes en un pleito pueda solicitar que el tribunal emita una sentencia sumaria a su favor. La moción al respecto debe ir acompañada de documentos que apoyen los hechos que el promovente alegue que no están en controversia y que avalan su posición. *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735 (1992). Al evaluar la moción, el tribunal examinará los documentos que le han sido sometidos y emitirá sentencia sumaria solamente si a la luz de los documentos sometidos, tanto por la parte promovente de la moción como por la parte promovida, además de los que contienen los autos, "no hay controversia real en cuanto a ningún hecho material y como cuestión de derecho procede dictarse". Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse: *Col. Ing. Agrim. P.R. v. A.A.A.*, supra; *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992).

Hemos destacado en el pasado que "[e]l hecho de que una parte presente una moción de sentencia sumaria no es garantía de que, una vez se determine que ésta procede, necesariamente haya que resolverla la favor de quien la presentó". *Consejo Tit. C. Parkside v. MGIC Fin.*

*Corp.*, 128 D.P.R. 538, 549 (1991). El tribunal debe analizar los hechos de la forma más favorable a la parte que se opone a ella y emitirá una sentencia a favor de la parte a la cual le asiste el derecho. *Col. Ing. Agrim. P.R. v. A.A.A.*, supra.

A la luz de los hechos que antes expusimos, los cuales no están en controversia, procede resolver desde este estrado apelativo que en el caso de autos no se ha configurado un incumplimiento contractual. La razón esbozada por el patrono se relacionaba exclusivamente con la inspección de la construcción del puente Teodoro Moscoso. Dicha razón puede enmarcase dentro del inciso "C", que dispone la parte "V" del reglamento de Personal como una causa justificada para cesantear. El reglamento establece que constituirá justa causa para cesantear a un empleado "[r]educciones en el empleo que se hacen necesarias debido a una reducción en el volumen de servicios prestados que prevalecen al momento de la cesantía". Anejo II, Apéndice de la apelación, pág. 54.

Desde que Mattei Nazario firmó el contrato en cuestión sabía que podría ser cesanteado en cualquier momento si surgía una situación como las descritas en el Reglamento de Personal, tal como lo fue en este caso la reducción de volumen de los servicios prestados por Vélez & Asoc. Su contrato, así como el reglamento administrativo de Vélez & Asoc., no vislumbran la antigüedad de los empleados como un criterio para determinar quién debía ser cesanteado ante una reducción en el volumen de los servicios prestados. Por ello, erró el tribunal de instancia al acudir al Art. 3 de la Ley Núm. 80, *supra*, para decidir una controversia que debía ser resuelta por las disposiciones contractuales libremente convenidas por las partes.

Por los fundamentos antes expuestos, *procede revocar la sentencia del Tribunal de Circuito de Apelaciones emitida en el caso del epígrafe y desestimar la reclamación instada contra Vélez & Asociados.*

*Se emitirá la sentencia correspondiente.*

La Juez Asociada Señora Naveira de Rodón concurrió sin opinión escrita. El Juez Asociado Señor Negrón García disintió sin opinión escrita.

