Opinión de conformidad emitida por la
Jueza Asociada Se-ñora Fiol Matta,
a la cual se une el Juez Asociado Señor Rivera Pérez.
Coincido con la sentencia emitida por el Tribunal en el día de hoy. El pago de la mesada al que obligan las leyes laborales de este país responde a un interés de proteger a los empleados de las prácticas abusivas e injustificadas de sus patronos y, a su vez, sirve de instrumento punitivo para disuadir del incumplimiento con la ley. Sin embargo, el pago “voluntario” de una compensación especial intitu-lada “mesada” por Baxter a los empleados de la planta de Carolina cesanteados injustificadamente, de ninguna ma-nera se puede tomar como el pago de la compensación de-bida por la Ley de Indemnización por despido injustificado en Puerto Rico, infra. La intención del pago voluntario de Baxter respondió a una política interna de la compañía de reconocer los años de servicios prestados. Así se hizo enten-der a los empleados en varios boletines informativos. Inter-pretar esta acción de otra forma cancelaría la obligación contractual del patrono de pagar la bonificación por años de servicios que surge de sus manuales internos. No puedo avalar esa consecuencia.
Los boletines informativos que publicó la compañía se-manalmente muestran con claridad la intención del desembolso. En el segundo boletín con relación al cierre de la planta se contesta la pregunta formulada por los em-pleados sobre el pago de lo que Baxter denominó una “me- *731 sada” a los que serían afectados por el cierre. Allí, la com-pañía anunció que aunque en caso de un cierre de la planta no es obligatorio pagar la mesada, Baxter la pagaría junto con otros beneficios. Al empleado se le prometió una com-pensación equivalente a un mes de sueldo, el sueldo una semana por cada año de servicio, más un 10% de dicho total. Además, como parte de su política interna de recono-cimiento por los años de servicios de sus empleados, Baxter anunció que también ofrecería orientaciones y talleres a los empleados afectados sobre el desempleo, la búsqueda de empleo, cómo hacer un résumé y un “Programa de Apoyo Emocional”.
El tercer boletín informativo sobre este asunto aclaró particularmente que:
Todo empleado que renuncie o sea despedido no cualifica. La mesada es un pago voluntario especial como agradecimiento a su valiosa aportación hasta el último día de empleo determi-nado por su gerente y supervisor. (Enfasis suplido.)
El boletín informativo decimotercero vuelve a hacer hin-capié en la voluntariedad del pago. Señaló que:
La Ley 80 es para penalizar al patrono cuando despide injus-tificadamente (ilegalmente) al trabajador. Como les he indi-cado en el pasado, un cierre de Planta [sic] por razones de reestructuración económica es legal y por lo tanto por ley no tiene que indemnizar a sus trabajadores. Baxter aunque por ley no tiene que indemnizar a sus empleados, decidió hacerlo voluntariamente.
El boletín informativo decimosexto anunció que la com-pañía estaría brindando servicios para ayudar al empleado durante el período anterior al cierre final de la planta de Carolina “de manera voluntaria y por el agradecimiento al valioso servicio de sus empleados. No es porque hayamos violado alguna ley”. (Enfasis suplido.) El boletín decimoc-tavo reitera que, a pesar de que la ley no obliga al patrono *732 a “pagar bonificación (mesada) en el caso de cierre de planta, lo hacemos como un símbolo de agradecimiento”.
Las expresiones de Baxter en estos boletines niegan que dicho pago responda a la necesidad o intención de cumplir con la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. see. 185 et seq.), y ni siquiera sugieren que este pago podría sustituir o complementar el pago de la mesada que obliga la ley, puesto que ésta es una indemnización por un acto ilegal. Por el contrario, Baxter negó firmemente que estu-viera cometiendo una ilegalidad y siempre afirmó que dicho pago era un pago voluntario en agradecimiento a los servicios prestados por los empleados cesanteados. La com-pensación que pagó Baxter a estos empleados tampoco se sujetó a condición alguna. Así pues, necesariamente debe-mos respetar el carácter contractual del pago por cesantía que surge de una política interna de la compañía, pues no hay una razón meritoria que justifique que favorezcamos con otra interpretación al patrono demandado.
Además, y más importante aún, la fórmula para deter-minar el pago de lo que Baxter denominó “mesada” no con-cuerda con lo que estrictamente dispone la ley. Véase Art. 1 de la Ley Núm. 80 (29 L.P.R.A. sec. 185a). Por todo esto, no podemos asumir que la compensación que hizo Baxter es equivalente al pago de la mesada que exige la ley. Es im-portante señalar que el primer artículo de la ley específi-camente dispone que la indemnización se debe calcular to-mando en cuenta los años de servicio, proveyendo para ello una compensación fija y una progresiva. Según la fórmula legislada, si el empleado es despedido dentro de los prime-ros cinco años, la indemnización fija será equivalente al sueldo de un mes. Si el despido sucede después de cinco años de empleo y hasta los quince años, la indemnización será igual al sueldo correspondiente a dos meses. Si el em-pleado es despedido luego de quince años de servicio, la indemnización fija corresponderá al sueldo de tres meses. En todos los casos, esta indemnización fija se suplementa *733 con una indemnización progresiva, equivalente a una se-mana por cada año de servicio. 29 L.P.R.A. see. 185a.(1)
Según surge de las varias demandas, los empleados que solicitan nuestra intervención fueron cesanteados entre los meses de mayo a diciembre de 1998. La gran parte de ellos había trabajado en la fábrica de Carolina desde 1961; ésta era la fábrica de Baxter de más años en operación en Puerto Rico. Del anejo que acompaña la primera demanda surge que ninguno de ellos había trabajado menos de diez años al momento de su despido, con excepción de dos, quie-nes comenzaron a laborar en 1989 y 1991. Por lo tanto, la compensación de un mes de sueldo que Baxter ofreció a sus empleados es muy inferior a lo que debieron haber reci-bido, de tratarse realmente de la mesada que contempla la Ley Núm. 80.
Con este trasfondo fáctico, las actuaciones de Baxter, al denominar “mesada” lo que no lo es, me parecen un intento de confundir al empleado en cuanto a los remedios a su alcance, más aún cuando el pago por la cesantía se com-puta similarmente sobre la base del salario, pero con una fórmula que no contempla los años de servicio prestados. Además, pretende obligar al empleado a renunciar a sus derechos cuando es despedido sin justa causa. Esto es con-trario a las disposiciones específicas de la Ley Núm. 80 y la doctrina reiterada de este Tribunal, según la cual la me-sada es irrenunciable y nulo cualquier contrato que dis-ponga lo contrario. 29 L.P.R.A. sec. 185i. Véanse: García Burgos v. A.E.E.L.A., 170 D.P.R. 315 (2007); Soc. de Ga-nanciales v. Vélez & Asoc., 145 D.P.R. 508 (1998).
*734 Por otra parte, no puedo concluir que el pago “volunta-rio” de Baxter responda a los mismos intereses que el pago de la mesada al que obliga la Ley Núm. 80. Es cierto que ambas indemnizaciones responden al daño que surge del despido. En cuanto al patrono, no obstante, son obligacio-nes muy distintas. La obligación de pagar la mesada es una obligación extracontractual, que responde a una viola-ción de ley, es decir, al despido injustificado. El pago “vo-luntario” de un dinero que no equivale a esta indemniza-ción, no cumple con la Ley Núm. 80 ni promueve la política pública laboral. Por lo tanto, la decisión del patrono de pagar un dinero a sus empleados cesanteados no tiene nin-gún efecto en cuanto a su obligación de pagar una indem-nización si se determina que dichos empleados fueron des-pedidos ilegalmente.
El 15 de agosto de 2008 la Asamblea Legislativa en-mendó la Ley Núm. 80 tomando en consideración una si-tuación similar al asunto que nos atañe. La Exposición de Motivos de la Ley Núm. 278 de 15 de agosto de 2008 reco-noce que algunas empresas en proceso de cierre o reorga-nización entregan un dinero a sus empleados cesanteados y distingue esta práctica del pago de la mesada. Según la Exposición de Motivos, mediante esta práctica las empre-sas en proceso de cierre comparten la liquidación de sus bienes con los obreros, lo cual debe fomentarse; ello no cumple, sin embargo, con el pago de la mesada cuando el despido es injustificado. Esta Ley Núm. 278 enmienda el Artículo 7 de la Ley Núm. '80 (29 L.P.R.A. sec. 185g), para establecer que cuando el despido de un empleado se funda-mente en el cierre total o parcial de las operaciones del establecimiento,
... se considerará como compensación especial toda cuantía de dinero recibida por los obreros producto de la liquidación o cierre del negocio o programas empresariales para compartir ganancias con sus empleados. Estas cuantías en nada afectan cómputo o derecho a reclamar compensación y la indemniza- *735 ción progresiva, dispuesta en el Artículo 1 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada. (Énfasis suplido.) Artículo 7 de la Ley Núm. 78, supra.
Cabe señalar que en el informe de la Comisión del Tra-bajo y Asuntos Laborales de la Cámara de Representantes sobre el Proyecto del Senado 2455,(2) se recogen unos seña-lamientos que merecen nuestra atención. Entre éstos, la Procuradora del Trabajo expone que en las jurisdicciones estadounidenses, el pago por cesantía o “severance payment”
... corresponde a la suma de dinero entregado a un empleado despedido en medio de un proceso de cierre total o permanente o una reorganización de la empresa para la cual labora dicho empleado. Dicha suma de dinero no se considera mesada .... (Énfasis en el original.) Informe Negativo sobre el P. del S. 2455, Comisión del Trabajo y Asuntos Laborales de la Cámara de Representantes, 18 de junio de 2008, pág. 3.
Por admisión de Baxter, el “Puerto Rico Severance Pay and Benefits Policy” de 1994 contiene unas guías sobre el pago de la compensación especial que ofreció como “mesa-da” a los empleados cesanteados y aborda asuntos relacio-nados con otros beneficios, como el pago de vacaciones, con-tinuación de cubierta médica, becas de estudios, entre otros. La compensación que recibieron los empleados res-ponde a la aplicación de esta política interna. Específica-mente, el primer boletín informativo de 24 de octubre de 1995 explica que “se utilizará la Política de Cesantía que se distribuyo [sic] el año pasado”. No cabe duda que la fuente de la obligación de Baxter de pagar la compensación especial no es la Ley Núm. 80, sino sus políticas internas respecto a los beneficios contractuales que ofrece a sus empleados. (3)
*736 En Puerto Rico, a diferencia de otras jurisdicciones de Estados Unidos, los manuales internos de los empleados son parte de las obligaciones contractuales que asume el patrono. En Santiago v. Kodak Caribbean Ltd., 129 D.P.R. 763, 775-776 (1992), resolvimos que “[e]l manual de una empresa que contiene las reglas y reglamentos del trabajo y que establece las normas, beneficios y privilegios que dis-frutará el empleado!,] forman parte del contrato de trabajo”. Por lo tanto, el pago de los beneficios a que tienen derecho los empleados en virtud de un manual es una obli-gación contractual. El beneficio del “severance payment”, como se reconoce en Estados Unidos, o de una indemniza-ción por años de servicio, no responde a los mismos intere-ses que la mesada propia de nuestra jurisdicción.(4) Por lo tanto, no se pueden asemejar estas compensaciones espe-ciales a la responsabilidad extracontractual que surge con motivo del despido sin justa causa que contempla la Ley Núm. 80.
Es menester recordar que nuestra Ley Núm. 80 no tiene un equivalente en otras jurisdicciones de Estados Unidos.(5) Nuestra legislación laboral tiene su evolución *737 histórica propia, desde el Código de Comercio de 1886, que protegía a los “dependientes del comercio” sujetos a un con-trato sin término fijo, concediéndoles el derecho a ser in-demnizados por los daños causados en casos de despido injustificado. R.N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño, 8va ed., [ed. de autor], 2005, pág. 110.(6) Con la Ley Núm. 43 de 28 de abril de 1930 entró en vigor en Puerto Rico una legislación para establecer el derecho de todo obrero empleado por tiempo indefinido que fuese despedido sin justa causa y sin previo aviso, a una compen-sación equivalente al sueldo de una semana, una quincena o un mes, dependiendo de la forma acostumbrada del pago de salario del empleado. 1930 Leyes de Puerto Rico 357 y 359. La Ley Núm. 50 de 20 de abril de 1949 dispuso tam-bién una compensación por despido injustificado. 1949 Le-yes de Puerto Rico 127 y 129.
*738 La legislación vigente, Ley Núm. 80, añadió a la “mesa-da” una compensación progresiva del sueldo de una se-mana por cada año de servicio. El 17 de septiembre de 1996 se aprobó la Ley Núm. 234 con el propósito de aumen-tar nuevamente el remedio en casos de despido injustifi-cado mediante un pago escalonado del sueldo de uno a tres meses. 29 L.P.R.A. sec. 185a. Finalmente, la Ley Núm. 128 de 7 de octubre de 2005 duplicó el monto de la indemniza-ción fija que dispone la ley y estableció el pago escalonado de la indemnización progresiva. 29 L.P.R.A. sec. 185a. Como vemos, la historia de nuestra legislación protectora del trabajo siempre ha mostrado tendencias claras hacia la protección de los obreros y empleados ante la posibilidad del despido.
Reconociendo las deficiencias de las varias legislaciones, la Asamblea Legislativa a través de los años se ha dado a la tarea de aprobar enmiendas a estas leyes para disponer de un mejor remedio para la clase trabajadora. No obs-tante, muchos estudiosos de esta materia han concluido que aún el remedio exclusivo de la Ley Núm. 80 resulta insuficiente.(7)
Por último, la posibilidad de imponer a Baxter el pago de la mesada por despido injustificado dispuesta por la Ley Núm. 80, a la vez que la compensación especial que conce-dió la empresa según su obligación contractual, a mi enten-der no constituye una doble penalidad. No dudamos que ambas compensaciones van dirigidas a la indemnización de unos daños ocasionados por el acto del despido. Sin embargo, nuestras expresiones en S.L.G. Afanador v. Roger Electric Co., Inc., 156 D.P.R. 651 (2002), prohibiendo una *739 doble penalidad contra el patrono se dan en el contexto de una reclamación bajo dos leyes que establecen, cada una, un derecho a indemnización como penalidad por los mis-mos hechos. En el caso ante nuestra consideración, la única reclamación de los demandantes es al remedio exclu-sivo que provee la Ley Núm. 80. No estamos ante un caso de concurrencia de reclamaciones ni de penalidades.
Por estas razones estoy conforme.

 La Ley Núm. 128 de 7 de octubre de 2005 alteró esta fórmula. La indemni-zación fija será equivalente al sueldo correspondiente a dos meses si el despido ocu-rre dentro de los primeros cinco años; el sueldo correspondiente de tres meses si ocurre luego de los cinco años hasta los quince años; o el sueldo correspondiente a seis meses si ocurre luego de quince años de servicio. Además habrá una indemni-zación progresiva, equivalente a una semana por cada año de servicio, si el despido ocurre dentro de los primeros cinco años, dos semanas por cada año de servicio si ocurre luego de cinco años hasta los quince años de servicio, o tres semanas por cada año de servicio luego de quince años. 29 L.P.R.A. sec. 185a.

 Este proyecto se aprobó el 15 de agosto de 2008, Ley Núm. 278.

 En esto Baxter es consecuente con la práctica de las compañías estadouni-denses, especialmente las manufactureras, de pagar este beneficio a sus empleados a *736 base de una política de personal. Véanse las encuestas publicadas en Personnel Policies Forum, auspiciadas por el Bureau of National Affairs, de las cuales se puede concluir que los pagos por cesantía o “severance benefits” efectivamente responden a una política interna de las compañías como parte de los beneficios de empleo prometidos.

 El concepto de la indemnización por años de servicio se puede precisar como la “reparación pecuniaria por el daño originado por haber empleado su esfuerzo personal en beneficio de un patrón y no exclusivamente en el propio .... La causa jurídica de la indemnización emana de su definición. Consiste en un daño específico, que surge, no de la actividad del patrón, sino del contrato de trabajo mismo”. R.M. Mengod Gimeno, La indemnización por años de servicio, Santiago, Editorial Jurídica de Chile, 1966, págs. 10-11.

 La norma de “employment-at-will”, propia de las jurisdicciones de los estados federados, surgió a finales del siglo XIX como parte de la filosofía económica del laissez-faire. Según se explica por los tribunales de los estados en Payne v. Western & A.R.R. Co., 81 Tenn. 507 (1884), y Martin v. New York Life Ins. Co., 148 N.Y. 117 (1895), la doctrina de “empleo a voluntad” permite al patrono que contrate emplea-dos por un término indeterminado, despedirlos libremente. Por la influencia del tra-tado de 1877 de Horace Wood, Treatise of the Law of Master and Servant Covering the Relation, Duties, and Liabilities of Employers and Employees, en el siglo XX esta *737 norma se consolidó como la norma imperante en todos los estados de la unión estadounidense. Véanse: R.N. Delgado Zayas, Apuntes para el estudio de la legisla-ción protectora del trabajo en el Derecho laboral puertorriqueño, 8va ed., [ed. de autor], 2005, págs. 110-111; C. Zeno Santiago y V.M. Bermúdez, Tratado de Derecho del Trabajo, San Juan, Pubs. JTS, 2003, pág. 151; D.J. Libenson, Leasing Human Capital: Toward a New Foundation for Employment Termination Law, 27 Berkeley J. Emp. & Lab. L. Ill, 117 (2006). El único estado con una legislación laboral que impone un requisito de justa causa para el despido de empleados sin término fijo es Montana, donde en 1987 se legisló para esos fines. Véanse: Wrongful Discharge from Employment Act, Mont. Code Ann. 39-2-901 et seq.; Whidden v. Nerison, 1999 MT 110. La única otra jurisdicción dentro de Estados Unidos, además de Puerto Rico, con un requisito de justa causa para el despido es Islas Vírgenes, cuya legislación entró en vigor el 29 de diciembre de 1986. Delgado Zayas, op. cit., pág. 111.

 El Artículo 217 del Código de Comercio disponía lo siguiente:
“Si el contrato [sie] entre los comerciantes y sus mancebos o dependientes se hubiere celebrado por un tiempo fijo no podrá ninguna de las partes contratantes separarse, sin consentimiento de la otra, de su cumplimiento hasta la terminación del plazo convenido.
“Los que contravinieran a esta cláusula, quedarán sujetos a la indemnización de daños y perjuicios, salvo lo dispuesto en los artículos siguientes.” Código de Comercio de Puerto Rico, San Juan, Negociado de Materiales, San Juan, 1932, pág. 70.
El Artículo 220, por su parte, disponía que:
“En los casos de que el empeño no tuviere tiempo señalado, cualquiera de las dos partes podrá darlo por fenecido, avisando a la otra con un mes de anticipación.
“El factor o_ mancebo tendrá derecho, en este caso al sueldo que corresponda a dicha mesada.” Id., pág. 72.
Este artículo quedó expresamente derogado por el Artículo 4 de la Ley Núm. 50 de 20 de abril de 1949 (1949 Leyes de Puerto Rico 127).

 En su Tratado del Derecho del Trabajo, el Prof. Charles Zeno Santiago y el Ledo. Víctor M. Bermúdez, explican que “nos encontramos en una época donde los cambios son constantes y es propio que se evalúen los modelos económicos y se escudriñen los distintos sistemas jurídicos para que nuestra legislación social se mantenga a la vanguardia. A través de lo cual, se pueda mantener la estabilidad económica, política y social que se obtiene cuando los intereses de los trabajadores están en su justo balance con el de los dueños del capital.” Zeno Santiago y Bermúdez Pérez, op. cit., pág. 365.